**Robert K. LAWSON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2000–SC–0024–TG.

Supreme Court of Kentucky.

Sept. 26, 2002.

---

**25.** *See* KRS 532.090(1).

Karen Maurer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

A.B. Chandler, III, Attorney General, Matthew D. Nelson, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

KELLER, Justice.

## I. INTRODUCTION

A Laurel County Circuit Court jury convicted Appellant of First–Degree Fleeing or Evading Police and Felony Receiving Stolen Property, found Appellant eligible for enhanced sentencing as a First–Degree Persistent Felony Offender (PFO), and recommended consecutive terms of twelve (12) years and six (6) months imprisonment for each offense. At final sentencing, the trial court sentenced Appellant to ten (10) years for each offense, and ordered the sentences to run consecutively for a total sentence of twenty (20) years imprisonment. Appellant thus appeals to this Court as a matter-of-right.[1] After a review of the record, we affirm Appellant's convictions and PFO-enhanced ten (10) year sentences, but reverse the judgment to the extent that it orders those terms of imprisonment to run consecutively and remand the case to the trial court for a new sentencing hearing at which a jury will make a recommendation as to whether Appellant serves his ten (10) year sentences concurrently or consecutively, in whole or in part.

## II. FACTUAL BACKGROUND

On February 14, 1999, Appellant was employed to detail cars at his step-uncle Jim Sharp's used car dealership. That night, a 1986 Pontiac Firebird was taken from the lot without Sharp's permission. Laurel County Deputy Sheriff Jerry Hollon was on routine patrol that evening when he observed a 1986 Pontiac Firebird speeding down the road. Deputy Hollon engaged his marked vehicle's siren and flashing lights in an attempt to alert the driver of the Firebird to pull the automobile over. Instead, the driver fled, speeding up, running traffic lights, and violating lane discipline. Deputy Hollon pursued the Firebird and other officers soon joined in the pursuit.

During the chase, the Firebird reached speeds of between one-hundred (100) and one-hundred and twenty-five (125) miles per hour. It traveled on Interstate 75 where it made a U-turn in the grass median and reversed direction. Hoping to force the driver of the vehicle to stop, the police set up a rolling roadblock. The driver, however, attempted to pass the roadblock in the emergency lane, lost control, and crashed into the guard rail. The car became airborne and landed in the median. The driver opened the car door and ran into the nearby woods.

Deputy Hollon testified that he saw the driver's profile twice—once during the U-turn and again when the driver exited the Firebird—and broadcasted a description of the driver over the police radio. Within forty-five (45) minutes, two (2) state police officers apprehended Appellant, who matched the description given by Deputy Hollon, at a nearby gas station.

Appellant was indicted for First–Degree Fleeing or Evading Police, Felony Receiv-

---

1. Ky. Const. § 110(2)(b).

ing Stolen Property, and being a First–Degree Persistent Felony Offender. At trial, the Commonwealth relied upon the testimony of Deputy Hollon and the owner of the vehicle. Appellant's primary defense to the charge was that Deputy Hollon was mistaken in his identification. Appellant testified that, during the time that Deputy Hollon was chasing the Firebird, he was hitchhiking and was picked up by strangers who robbed him and left him beside the road when he refused to smoke marijuana with them. Appellant testified that he was attempting to call his girlfriend for a ride home when the police apprehended him at the gas station.

The jury found Appellant guilty of the indicted offenses, found Appellant eligible for enhanced sentencing as a First–Degree PFO, recommended enhanced sentences of twelve (12) years and six (6) months for each offense, and recommended that the two (2) sentences run consecutively for a total sentence of twenty-five (25) years. At final sentencing, the trial court reduced each sentence to ten (10) years and ordered the two (2) sentences to run consecutively for a total sentence of twenty (20) years. This appeal follows.

## III. ANALYSIS

### A. LESSER–INCLUDED OFFENSE INSTRUCTIONS

■ Appellant alleges that the trial court erred by failing to instruct the jury that it could return verdicts as to the lesser-included misdemeanor offenses of Second–Degree Fleeing or Evading Police and Unlawful Use of an Automobile. We analyze both allegations of error in accordance with the well-settled principles that:

(1) "it is the duty of the trial judge to prepare and give instructions on the whole law of the case ... [including] instructions applicable to every state of the case deducible or supported to any extent by the testimony"; [2] and (2) Although a defendant has "a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury on proper instructions," [3] the trial court should instruct as to lesser-included offenses " 'only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense.' " [4] In the case sub judice, we find that the trial court properly denied Appellant's requested lesser-included offense instructions.

### 1. SECOND–DEGREE FLEEING AND EVADING

■ The Grand Jury's charge of First–Degree Fleeing or Evading Police read:

That on or about the 14th of February, 1999, in Laurel County, Kentucky, the above named defendant, acting alone or in concert with others, committed the offense of Fleeing or Evading a Police Officer in the First Degree by operating a motor vehicle on the public highways at high rates of speeds [sic] exceeding 100 mph and in the course of fleeing created a substantial risk of harm to another person, and all such acts committed while fleeing from or evading a police officer[.]

The indictment thus charged First–Degree Fleeing or Evading Police as defined in KRS 520.095(1)(a)(4):

---

2. *Taylor v. Commonwealth*, Ky., 995 S.W.2d 355, 360 (1999).

3. *Id.*

4. *Gabow v. Commonwealth*, Ky., 34 S.W.3d 63, 72 (2000) (*quoting Houston v. Commonwealth*, 975 S.W.2d 925, 929 (1998)).

A person is guilty of fleeing or evading police in the first degree:

(a) When, while operating a motor vehicle with intent to elude or flee, the person knowingly or wantonly disobeys a direction to stop his or her motor vehicle, given by a person recognized to be a police officer, and at least one (1) of the following conditions exists:

. . .

(4) By fleeing or eluding, the person is the cause, or creates substantial risk, of serious physical injury or death to any person or property[.] [5]

The trial court's instruction to the jury tracked the language of KRS 520.095(1)(a)(4):

## INSTRUCTION NO. 3

*First–Degree Fleeing or Evading Police*

You will find the Defendant guilty of First–Degree Fleeing or Evading Police under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about February 14, 1999, and within 12 months before the finding of the indictment herein, he operated a motor vehicle with the intent to flee or elude;

B. That he knowingly or wantonly disobeyed a direction to stop his motor vehicle, which direction was given by a person who he recognized to be a police officer;

AND

C. That his act of fleeing or eluding caused or created a substantial risk of serious physical injury or death to any person or serious injury to property.[6]

Appellant alleges that the trial court erred when it failed to instruct the jury as to the lesser-included misdemeanor offense of Second–Degree Fleeing or Evading Police defined at KRS 520.100(1):

A person is guilty of fleeing or evading police in the second degree when, while operating a motor vehicle with intent to elude or flee, the person knowingly or wantonly disobeys a recognized direction to stop his vehicle, given by a person recognized to be a peace officer.[7]

Second–Degree Fleeing or Evading Police differs from the First–Degree felony offense in that "[t]he presence of one of the aggravating factors set forth in [KRS 520.095(a)(1)–(4) ] enhances the offense from a Class A misdemeanor to a Class D felony." [8] As the only aggravating circumstance relevant to this case is the one set forth at KRS 520.095(1)(a)(4)—e.g., "by fleeing or eluding, the person is the cause, or creates substantial risk, of serious phys-

---

**5.** KRS 520.095(1).

**6.** The trial court's jury instruction substantially mirrored the specimen instruction contained in 1 Cooper, Kentucky Instructions to Juries, § 7.36A (Anderson Publishing Co., Cum.Supp.2002) (hereinafter, "Cooper"), although the "within 12 months before the finding of the indictment herein" language in Paragraph (A) of the trial court's instruction differs from the specimen instruction and, more important, appears unnecessary because First–Degree Fleeing or Evading Police is a felony offense not subject to a twelve (12) month statute of limitations. KRS 500.050(1). We also observe that, because no evidence at trial would support the conclusion that Appellant actually caused serious physical injury or death to persons or property, Paragraph (C) of the trial court's instruction should have omitted that theory of aggravation and include only the "created a substantial risk" theory.

**7.** KRS 520.100(1).

**8.** Cooper, *supra* note 6 at § 7.36C, comment.

ical injury or death to any person or property"—we determine whether Appellant was entitled to a lesser-included offense instruction of Second–Degree Fleeing or Evading Police by examining whether a jury could have possessed reasonable doubts as to Paragraph (C) of the trial court's instruction but nonetheless believed the facts described in Paragraphs (A) and (B) beyond a reasonable doubt. Here, the Commonwealth introduced no evidence to permit a jury to conclude that the driver's actions actually *caused* serious physical injury or death to any person or serious injury to property,[9] and the inquiry thus becomes whether a jury could have had reasonable doubts as to whether the fleeing driver's conduct created a substantial risk of such results.

Although we recognize that, in the vast majority of cases, the question of whether an actor's fleeing or evading created a substantial risk of such results is subject to reasonable disagreement, and, therefore, the misdemeanor offense will typically be a necessary lesser-included offense of First–Degree Fleeing or Evading Police,[10] we find the evidence in this case overwhelming and conclude that no jury could reasonably have believed that Appellant fled or evaded police but did not create a substantial risk of death or serious physical injury to any person. The stolen Firebird was driven at speeds of up to 125 miles per hour—almost twice the legal speed limit even on an interstate highway. On more than one occasion, the driver

sped through an intersection while disregarding traffic control devices and weaving the Firebird between vehicles stopped in his path. Finally, the driver attempted to avoid a police roadblock by passing the roadblock in an emergency lane, and the Firebird became airborne after crashing into a guard rail. We can envision no reasonable challenge to the conclusion that Appellant's actions created a substantial risk of serious physical injury or death—to other motorists and police officers in his path, not to mention himself. Therefore, we conclude that the trial court properly denied Appellant's request for it to instruct the jury as to the lesser-included offense of Second–Degree Fleeing or Evading Police.

## 2. UNAUTHORIZED USE OF AN AUTOMOBILE

■ The Grand Jury's charge of Felony Receiving Stolen Property read:

> [O]n or about the 14th day of February, 1999, in Laurel County, Kentucky, the above named defendant, acting alone or in concert with others, committed the offense of Receiving Stolen Property of the Value of $300 or More by receiving and possessing a 1986 Pontiac Firebird automobile of the value of $300 or more which had been stolen from Jim Sharp[.]

The indictment thus charged the offense of Receiving Stolen Property as defined in the version of KRS 514.110 then in force:

> (1) A person is guilty of receiving stolen property when he receives, retains,

---

9. Although the instructions given in this case and the specimen instructions in Justice Cooper's treatise refer to "serious injury to property," a literal reading of the statute would require a jury finding that the Defendant's act of fleeing or evading created a substantial risk of "serious physical injury or death" to property. Some observers have noted that this phrasing is largely incoherent in light of the KRS 500.080(15) definition of "serious physical injury." *See* Robert G. Lawson & William

H. Fortune, Kentucky Criminal Law, § 15–2(f) (LEXIS 2000 Supp.). Interpretation of this curious phrasing is, however, unnecessary to our resolution of this case because we resolve the relevant issues solely in reference to the substantial risk of serious physical injury or death to persons.

10. Cooper, *supra* note 6 at § 7.36C, comment.

or disposes of movable property of another knowing that it has been stolen, unless the property is received, retained, or disposed of with intent to restore it to the owner.

. . .

(3) Receiving stolen property is a Class A misdemeanor unless the value of the property is three hundred dollars ($300) or more . . . in which case it is a Class D felony.[11]

The trial court's instruction to the jury tracked the language of the prior version of KRS 514.110:

### INSTRUCTION NO. 4

*Receiving Stolen Property—Value $300 or More*

You will find the Defendant guilty of Receiving Stolen Property under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about February 14, 1999, and before the finding of the Indictment herein, he had possession of a 1986 Pontiac Firebird automobile which belonged to Jim Sharp;

B. That said 1986 Pontiac Firebird automobile had been stolen from Jim Sharp and the Defendant knew it was stolen property when he had possession of it;

C. That he did not have possession of the 1986 Pontiac Firebird automobile with the intention of restoring it to its rightful owner; AND

D. That when the Defendant had possession of the 1986 Pontiac Firebird Automobile, it had a value of $300.00 or more.

Appellant argues that the trial court erred to his substantial prejudice when it failed to instruct the jury as to Unauthorized Use of an Automobile as a lesser-included offense of the indicted offense of Felony Receiving Stolen Property. KRS 514.100 defines the offense of Unauthorized Use of an Automobile:

A person is guilty of the unauthorized use of an automobile or other propelled vehicle when he knowingly operates, exercises control over, or otherwise uses such vehicle without consent of the owner having legal possession thereof.[12]

The Penal Code Commentary to KRS 514.100 explains that the offense of Unauthorized Use of an Automobile provides criminal sanctions for conduct that does not rise to the level of the Kentucky Penal Code theft offenses:

This section is directed primarily against "joy riding" generally committed by youngsters. It is necessary because it covers conduct not amounting to theft under other sections of this chapter. There is no intention to deprive the owner of his property or to appropriate property.[13]

As the Court of Appeals observed in *Logan v. Commonwealth,*[14] the offenses of Receiving Stolen Property and Unauthorized Use of an Automobile can be distinguished by the requirements as to the

---

11. KRS 514.110. The 2000 General Assembly amended KRS 514.110 to extend the culpable mental state to include persons "having reason to believe that it has been stolen," 2000 Ky. Acts. ch. 490, § 2, and to provide separate penalties for receiving stolen property offenses involving anhydrous ammonia. 2000 Ky. Acts. ch 233, § 9.

12. KRS 514.100(1).

13. Commentary to KRS 514.100 (Banks/Baldwin 1974).

14. Ky.App., 785 S.W.2d 497 (1990).

defendant's knowledge as well as the defendant's intentions as to the automobile:

> "Unauthorized use" involves the use of a vehicle without the consent of the owner. A conviction for receipt of stolen property, on the other hand, requires the Commonwealth to prove that the defendant both knew that the property was stolen and intended not to restore it to its owner.[15]

In other words, the offense of Felony Receiving Stolen Property requires proof of three (3) elements that the offense of Unauthorized Use of an Automobile does not: (1) the defendant must know (or, under the statute as amended, have reason to know) that the automobile is stolen property; (2) the defendant must not possess the vehicle with the intention of returning it to its rightful owner; and (3) the vehicle must have a value of three hundred dollars ($300) or more. We recognize that the "knowing" mental states for the offenses overlap substantially—a defendant who drives another's vehicle when he knows it to be stolen property will, almost by definition, "knowingly operate[ ] . . . such vehicle without consent of the owner having legal possession thereof." And, as the value of the vehicle possessed is irrelevant to the offense of Unauthorized Use of an Automobile, we assess whether Appellant was entitled to the requested lesser-included offense instruction by examining whether the evidence would have permitted a jury to form reasonable doubts as to Paragraph (C) of the trial court's instruction—i.e., whether the evidence would reasonably have supported a belief that Appellant possessed the vehicle with the intention of restoring it to its owner—but otherwise conclude beyond a reasonable doubt that Appellant knowingly operated an automobile without the owner's consent. As the Court of Appeals did in *Logan*, "[w]e do not think there was any substantial evidence at trial to support the requested instruction, and we affirm its denial."[16]

In short, we find absolutely no evidence upon which a jury could reasonably base a belief that Appellant intended to return the vehicle to its proper owner. Appellant argues that such an inference could be based upon evidence that: (1) the vehicle was taken from a family member; (2) as an employee of the car lot, Appellant had permission to drive certain vehicles on the lot (a contention that does not assist Appellant because, if he had permission—or believed he had permission—to drive the vehicle, he would have a defense to both the greater and lesser offenses[17]); and (3) that the Firebird was eventually returned to its owner. We find Appellant's "spin" of the evidence highly disingenuous. The trial testimony demonstrated that Appellant did have permission to drive one (1) vehicle on the lot—a vehicle upon which he was making installment payments—but that vehicle was not the Firebird. Further, while Appellant is factually correct in his statement that the Firebird was eventually returned to its owner, the return took place months after the incidents that gave rise to this indictment, and law enforcement officers—not Appellant—returned it. Of course, Appellant is unable to point to any of his own testimony to support the lesser-included offense instruction because he disclaimed any role in the pursuit, and, as such, his "testimony, if believed, would appear to exonerate him of any criminal wrongdoing, rather than convict him of unauthorized use of a vehicle."[18]

---

**15.** *Id.* at 498.

**16.** *Id.*

**17.** *Id.*

**18.** *Id.*

We have held that "intent may be inferred from actions because a person is presumed to intend the logical and probable consequences of his conduct, and a person's state of mind may be inferred from actions preceding and following the charged offense."[19] In this case, Appellant's argument for the lesser-included offense instruction myopically ignores any of the events after Deputy Hollon turned on his lights and siren. Even if we assume *arguendo* that Appellant may have originally merely "borrowed" the Firebird with the intention of returning it to his step-uncle's used car lot without anyone knowing—a theory which, itself, rests on nothing more than pure speculation and the fact that the car's owner was Appellant's step-uncle—Appellant unquestionably changed his intentions when he began his attempt to avoid detection.[20] After hearing the evidence that Appellant undertook a reckless flight—literally, as the Firebird became airborne at one point—from police authorities, *actually abandoned* the vehicle in a median, and escaped on foot, no reasonable jury could conclude that Appellant intended to return the Firebird to its rightful owner during the entirety of time he operated the vehicle. Appellant thus seeks an instruction on a lesser offense that is supported by no evidence presented either by himself or by the Commonwealth. As was the case in *Logan*, the jury could have believed either the Commonwealth's evidence or Appellant's evidence, but none of that evidence supported an instruction on Unauthorized Use of an Automobile. The trial court properly denied Appellant's requested lesser-included offense instruction, and the jury chose to

believe the Commonwealth's evidence. We find no error.

## B. SENTENCING PHASE

At the combined PFO/Truth-in-Sentencing phase, Probation and Parole Officer Josh Tye testified on behalf of the Commonwealth regarding PFO enhancement, the relevant penalty ranges, and Appellant's parole eligibility for the offenses. Over Appellant's objection, Officer Tye testified, erroneously, that the maximum sentence of imprisonment the jury could fix for Appellant's crimes, if the jury chose the maximum term of imprisonment for each offense and ordered the two (2) sentences to run consecutively, was forty (40) years. In fact, the maximum term of imprisonment that Appellant could receive for his Class D felony offenses enhanced by his First-Degree PFO status was twenty (20) years.[21] During The Commonwealth's PFO/Truth-in-Sentencing Phase closing argument, the prosecuting attorney explained that the functional penalty range in light of both PFO-enhancement and the jury's decision as to whether the two (2) sentences were to run concurrently or consecutively, was from ten (10) to forty (40) years and advised the jury that, while he did not think Appellant deserved the maximum penalty, he would recommend that the jury fix a total penalty of twenty (20) years.

The jury fixed Appellant's penalty at twelve (12) years and six (6) months for each conviction, and indicated that the sentences should run consecutively—a total of twenty-five (25) years. Appellant filed a motion for a new trial in which he advised the trial court that the jury's sentence fell

**19.** *Stopher v. Commonwealth*, Ky., 57 S.W.3d 787, 802 (2001).

**20.** Model Penal Code § 223.6, comment 4(a) (Official Draft and Revised Comments 1985).

**21.** KRS 532.110(1)(c); KRS 532.080(6)(b); *Young v. Commonwealth*, Ky., 968 S.W.2d 670, 675 (1998).

outside the permissible range, and the Commonwealth conceded the error,[22] but asked the trial court to "remedy the problem by reducing the defendant's sentence on each enhanced D felony to ten years, and then running those sentences consecutively." The trial court did as the Commonwealth suggested,[23] and the trial court's final judgment sentenced Appellant to the minimum-PFO-enhanced sentence of ten (10) years for each offense, but ordered the two (2) sentences to run consecutively, for a total sentence of twenty (20) years.

Appellant contests the trial court's re-sentencing as violating his rights of due process and argues that the twenty (20) year sentence is contrary to the jury's intent. Appellant reasons that, based on the erroneous information given to the jury during the PFO/Truth–in–Sentencing phase, the jury believed it was considering a range of penalties between "goalposts" of ten (10) years—the minimum possible sentence—and forty (40) years—the maximum penalty, according to the incorrect information given to the jury. Appellant observes that the jury refrained from selecting the maximum punishment, and instead selected the midpoint—twenty-five (25) years. Appellant maintains that the trial court's modification of the sentence is improper because it ignored the jury's decision not to impose the maximum sentence, and Appellant encourages us to reduce his sentence to twelve (12) years and six (6)

**22.** Although the parties to this appeal address only the evidentiary error that occurred when the trial court permitted the Commonwealth to introduce factually incorrect information regarding the available penalty range through the testimony of a Probation and Parole Officer, we observe that the trial court's PFO/Truth–in–Sentencing Phase instruction on concurrent/consecutive sentencing instruction and verdict form similarly did not correctly inform the jury of its responsibility. Instruction No. 6 read:

> You will further recommend in your verdict whether the punishments which you have fixed for the Defendant should be served concurrently (at the same time) or consecutively (one to begin after the completion of the other).

The relevant portion of the verdict form read:
*As to: CONCURRENT—CONSECUTIVE RECOMMENDATION:*

> We, the jury, recommend that the punishments fixed for the Defendant above be served as follows:
> (CIRCLE ONE)
> CONCURRENTLY CONSECUTIVELY

> _____
> FOREPERSON

As we have indicated previously in *Commonwealth v. Pelfrey*, Ky., 998 S.W.2d 460 (1999), a proper instruction and verdict form should advise the jury "that it is not required to recommend that *all* sentences be run *all* concurrently or *all* consecutively, but that it may recommend that some sentences be run con-currently and others consecutively." *Id.* at 462. Accordingly, we suggest a more informative and correct verdict form in this case would read:

> We, the jury, recommend that the sentences fixed for the Defendant under Counts 1 and 2 above shall be served concurrently (at the same time) or consecutively (one to begin after the completion of the other), in whole or in part, as follows:

> _____
> For a total sentence of _____ years, not to exceed, however, a total sentence of twenty (20) years.

Upon resentencing in this case, the last phrase ("not to exceed ..."), may be omitted because consecutive sentences for Appellant's two (2) ten (10) year sentences cannot exceed the twenty (20) year maximum.

**23.** We observe that, in order to reach a lawful sentence, the trial court could have imposed the twelve (12) years and six (6) months that the jury recommended for each of Appellant's crimes, but ordered five (5) years of the sentence for one (1) of the convictions to run concurrently with the other sentence. Instead, the trial court exercised its discretion under KRS 532.070(1) to modify the jury's sentence in a situation where the trial judge "is of the opinion that a sentence of imprisonment is necessary but that the maximum term fixed by the jury is unduly harsh[.]" KRS 532.070(1).

months. Although certain language in *Foley v. Commonwealth*[24] appears to prescribe such a modification of Appellant's consecutive sentences, we hold that such relief would be inappropriate in this case because the trial court has exercised its discretion under KRS 532.070(1) to modify the jury's sentences as to each charge,[25] and by ordering Appellant's convictions to run concurrently, we would impose a minimum sentence of ten (10) years of which the jury *was* aware, but rejected. We also perceive a difference between an instructional error that fails to inform the jury of the full extent of its power to recommend that sentences run partially concurrently and partially consecutively and the evidentiary error in this case that has the effect of distorting the jury's conception of the available sentencing range. Nonetheless, we believe that Appellant is entitled to a different form of relief.

 Although we recognize that trial courts have the authority to make a final decision whether a defendant's sentences are to run concurrently or consecutively,[26] and that juries' determinations as to that issue are merely recommendations,[27] we decline the Commonwealth's invitation to find that the error in this case is harmless. While this Court has held that a defendant in an RCr 11.42 context could not satisfy his burden of proving prejudice as to a comparable error because of the trial court's ultimate authority to decide whether multiple felony sentences run concurrently or consecutively,[28] in *Stoker v. Commonwealth,*[29] a majority of this Court rejected the contention errors in concurrent/consecutive jury instructions will be harmless because the trial court makes the ultimate decision.[30] This Court has recognized that a jury's recommendation as to concurrent or consecutive sentencing is far from meaningless or pro forma, and that the jury's recommendation in this regard has "significance, meaning, and importance."[31] We believe that to declare the error in this case harmless would effectively delete KRS 532.055(2)'s requirement that "[t]he jury *shall* recommend whether the sentences shall be served concurrently or consecutively"[32] and would ignore the jury's important role in the sentencing process. Because the minimum PFO-enhanced sentence for each of Appellant's offenses is ten (10) years, it is an incontrovertible fact that the trial court could have sentenced Appellant to twenty (20) years regardless of the sentences for each conviction fixed by the jury and the jury's recommendation as to whether those sentences should run concurrently

---

**24.** Ky., 942 S.W.2d 876, 886 (1997) ("Should a jury hand down consecutive sentences that are out of the range of the statutes, the trial court has the *power and duty* to declare all sentences to run concurrently." (emphasis added)).

**25.** *See* note 23, *supra.*

**26.** KRS 532.110(1) ("[M]ultiple sentences shall run concurrently or consecutively *as the court shall determine at the time of sentence....*" (emphasis added)).

**27.** KRS 532.055(2); *Dotson v. Commonwealth,* Ky., 740 S.W.2d 930 (1987).

**28.** *Commonwealth v. Pelfrey, supra* note 22.

**29.** Ky., 828 S.W.2d 619 (1992).

**30.** *Id.* at 627. *See also Commonwealth v. Pelfrey, supra* note 22 at 462 (distinguishing *Stoker,* a direct appeal, from an RCr 11.42 postconviction action).

**31.** *Dotson v. Commonwealth, supra* note 27 at 931. *See also Stoker v. Commonwealth, supra* note 22 at 627.

**32.** KRS 532.055(2) (emphasis added).

or consecutively.[33] However, it is also a fact that, because of the improper information given to the jury regarding the maximum sentence it could fix, no one will ever know what sentence the jury would have recommended if had deliberated Appellant's punishment in reference to the proper maximum penalty "goalpost"—twenty (20) years. While we may reasonably assume that the jury would not have chosen the minimum penalty of ten (10) years by recommending the minimum sentence on each offense to be served concurrently (because the jury did have full knowledge of the minimum penalty), we have no basis to assume that the jury would necessarily have chosen the maximum penalty of twenty (20) years if it was in possession of full and complete information about the penalty range. The jury could easily have again selected the midpoint of the range—fifteen (15) years. Although we recognize that the trial court may again elect to sentence Appellant to a total sentence of twenty (20) years, we believe due process entitles Appellant to a jury recommendation as to whether the sentences for his convictions run concurrently or consecutively, and we also know that the jury's recommendation will be considered by the trial court before it makes a final decision. We thus reverse the judgment to the extent that it orders Appellant's ten (10) year terms to run consecutively, and we remand the case to the trial court for it to conduct a new sentencing phase in accordance with *Boone v. Commonwealth*[34] at which the jury will recommend only whether the ten (10) year sentences for Appellant's two (2) convictions should be run consecutively or concurrently, in whole or in part.

## IV. CONCLUSION

For the above reasons, we affirm Appellant's First–Degree Fleeing or Evading Police and Receiving Stolen Property convictions as well as the PFO-enhanced ten (10) year prison sentences imposed for each conviction, but we reverse the judgment to the extent that it orders that the two (2) sentences run consecutively for a total sentence of twenty (20) years, and we remand the case to the trial court for a new sentencing hearing at which a jury will make a recommendation as to whether Appellant serves those sentences concurrently or consecutively, in whole or in part.

LAMBERT, C.J.; JOHNSTONE and STUMBO, JJ., concur.

COOPER, J., concurs in part and dissents in part by separate opinion in which GRAVES and WINTERSHEIMER, JJ., join.

COOPER, Justice, concurring in part and dissenting in part.

I concur in that portion of the majority opinion that affirms Appellant's convictions and reverses his sentences because of the introduction of inaccurate parole eligibility evidence. However, I dissent from the dicta in the opinion that purports to amend by judicial fiat two provisions of the Kentucky Penal Code, *viz:* KRS 532.055(2) and KRS 532.110(1).

KRS 532.055(2) provides, *inter alia:*

33. In fact, the trial court could have sentenced Appellant to a twenty (20) year term of imprisonment even if the jury was unable to agree upon sentences for the offenses after it determined Appellant's PFO status KRS 532.055(4) ("In the event that the jury is unable to agree as to the sentence or any portion thereof and so reports to the judge, the judge shall impose the sentence within the range provided elsewhere by law.").

34. Ky., 821 S.W.2d 813 (1992).

The jury shall recommend whether the sentences shall be served concurrently or consecutively.

Similarly, KRS 532.110(1) provides, *inter alia:*

[M]ultiple sentences shall run concurrently or consecutively as the court shall determine at the time of sentencing except . . . .

The majority opinion would amend (if it were in a holding instead of dicta) each of these statutes by adding after the phrase, "concurrently or consecutively," a new phrase, "in whole or in part," op. at 573, 580 n. 22, and by suggesting that it was error not to inform the jury "of the full extent of its power to recommend that sentences run partially concurrently and partially consecutively." *Id.* at 581. It should be noted at the outset that this proposition was not raised by either party and is irrelevant to a decision on the merits of any issue that was raised and decided in this case. And, as will be discussed, *infra,* it is also an unnecessary exercise in immateriality.

The majority's dicta asserts that a jury should be instructed that it has the authority to piecemeal its "concurrent or consecutive" recommendation, an authorization not contained in KRS 532.055(2), the only source of a jury's authority to make any recommendation at all with respect to concurrent or consecutive sentences. Suffice it to say that a jury instruction in a criminal case must be stated within the framework of the authorizing statute. *McGuire v. Commonwealth,* Ky., 885 S.W.2d 931, 936 (1994). The proposed instruction not only is unauthorized by the plain language of KRS 532.055(2), it is also contrary to the specimen instruction and verdict form recently approved by a majority of this Court (including the author of today's majority opinion) in *Commonwealth v. Pelfrey,* Ky., 998 S.W.2d 460, 462 (1999).

Although not specifically articulated therein, the majority opinion also implies that KRS 532.110(1) authorizes a sentencing judge to piecemeal the imposition of concurrent or consecutive sentences (for otherwise what would be the point in authorizing a jury to recommend such a procedure?). Perhaps the phrase, "as the court shall determine," in KRS 532.110(1) could be construed to confer that authority—but it would be a stretch. It would suffice to say that the statute has never been so construed and that the issue is not presented by the facts of this case.

Nevertheless, subject to the constitutional proscriptions against excessive fines and cruel and unusual punishments, U.S. Const. amend. VIII, Ky. Const. § 17, it is elementary that the sentence to be imposed for a criminal offense is purely a matter of legislative prerogative. *Brown v. Commonwealth,* Ky., 818 S.W.2d 600 (1991) (*citing Rummel v. Estelle,* 445 U.S. 263, 275–76, 284, 100 S.Ct. 1133, 1140, 1144, 63 L.Ed.2d 382 (1980) and *Workman v. Commonwealth,* Ky., 429 S.W.2d 374, 377 (1968)). *See also Hampton v. Commonwealth,* Ky., 666 S.W.2d 737, 741 (1984) ("[t]he sentence must conform to the limitations of the statute . . ."). Any common law prerogative previously afforded the judiciary with respect to sentencing is abrogated once the legislature speaks to the issue. *Bentley v. Commonwealth,* Ky., 269 S.W.2d 253, 255 (1954). We have repeatedly recognized that this legislative prerogative extends to determinations of whether sentences should run concurrently or consecutively. *E.g., Moore v. Commonwealth,* Ky., 990 S.W.2d 618, 620 (1999) (KRS 533.060(3) precludes ordering a sentence for an offense committed while awaiting trial to run concurrently with the offense for which the defendant was awaiting trial); *Gaither v. Commonwealth,* Ky., 963 S.W.2d 621, 622 (1997) (KRS

532.110(4) precludes ordering a sentence for a conviction of escape to run concurrently with any other sentence); *Devore v. Commonwealth,* Ky., 662 S.W.2d 829, 831 (1984) (KRS 533.060(2) precludes ordering a sentence for a conviction of an offense committed while on parole to run concurrently with any other sentence); *Hardy v. Commonwealth,* Ky., 590 S.W.2d 879 (1979) (KRS 532.110(1)(b) precludes ordering two or more definite sentences to run consecutively). If the legislature had intended that sentences should run concurrently or consecutively "in whole or in part," it would have been a simple matter to have said so.

Finally, this whole issue is an exercise in immateriality, for authorizing the jury to piecemeal its recommendation will have no practical effect on this or any other criminal case. The maximum aggregate enhanced sentences for the offenses of which Appellant was convicted is twenty years, KRS 532.110(1)(c), KRS 532.080(6)(b), and the minimum is ten years (ten and ten served concurrently). Thus, imposition of consecutive sentences can only occur under KRS 532.110(1), as written, if the jury fixes the sentence for each conviction at ten years. But if the desired sentence is more than ten but less than twenty years, that sentence can be imposed within the framework of the existing statutory scheme by simply imposing a sentence of, *e.g.,* fifteen years for each offense and ordering the sentences to be served concurrently. Nothing further is accomplished by, *e.g.,* ordering five years of a ten year sentence imposed for one offense to run concurrently and the remaining five years to run consecutively with the ten year sentence imposed for the other offense. In other words, sentences for multiple offenses can be imposed in such a way as to reach the desired aggregate sentence without resort to judicial amendment of the statutory scheme. Perhaps,

the recognition of that fact is one reason why the legislature did not include the phrase, "in whole or in part," in either KRS 532.055(2) or KRS 532.110(1).

Accordingly, I concur in the holdings of the majority opinion but dissent from its erroneous and unnecessary dicta.

GRAVES and WINTERSHEIMER, JJ., join this opinion, concurring in part and dissenting in part.