WRIGHT, J., CONCURRING IN PART AND DISSENTING IN PART:
While I otherwise agree with the majority, I dissent as to its holding that the trial court erred in denying Hall's motion for a directed verdict on the charge of theft by unlawful taking, over $500 but less than $10,000 (the taking of the police cruiser) and its holding on the unanimity issue regarding resisting arrest.
First, as to the directed verdict, "[o]n appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." Commonwealth v. Benham , 816 S.W.2d 186, 187 (Ky. 1991). This Court has held: "[i]ntent can be inferred from the actions of an accused and the surrounding circumstances. The jury has wide latitude in inferring intent from the evidence." Anastasi v. Commonwealth, 754 S.W.2d 860, 862 (Ky. 1988). Given Hall's actions, the jury could have properly inferred that Hall's intent was to deprive police of the cruiser. Therefore, I do not believe it would be "clearly unreasonable for a jury to find guilt."
Here, Hall stole the police car and fled from police. Possibly, as the majority posits, his intent was always to merely use the car as a means of escape and then leave it in a locale where police could recover it. However, that is not the only inference that could be drawn from the evidence-and not the inference the jury made. We should not allow the ultimate result (Hall's eventual abandonment of the vehicle) to be the exclusive factor in determining Hall's intent at the time he took the car and fled from police. We should, instead, look to the surrounding circumstances. Hall took the *24 cruiser from the police, drove the car onto a strip job and abandoned it in a gulley. The jury was free to infer that his intent was not to return the car, but, rather, to deprive the police department of its use. The fact that police easily located the vehicle should not impact this Court's holding.
While the majority overrules Lawson v. Commonwealth in part, I agree with the reasoning of that case, wherein this Court held:
Even if we assume arguendo that Appellant may have originally merely "borrowed" the Firebird with the intention of returning it to his step-uncle's used car lot without anyone knowing-a theory which, itself, rests on nothing more than pure speculation and the fact that the car's owner was Appellant's step-uncle-Appellant unquestionably changed his intentions when he began his attempt to avoid detection. After hearing the evidence that Appellant undertook a reckless flight-literally, as the Firebird became airborne at one point-from police authorities, actually abandoned the vehicle in a median, and escaped on foot, no reasonable jury could conclude that Appellant intended to return the Firebird to its rightful owner during the entirety of time he operated the vehicle.
85 S.W.3d 571, 579 (Ky. 2002). There, the stolen car was not left in a gulley on the dirt road of a strip job[44] -but in the median of an interstate highway. In both cases, the operator of the stolen vehicle abandoned the car to continue his flight from police on foot. Certainly, if abandoning a vehicle in the median of a heavily-traveled interstate highway is not enough for the jury to infer intent to return the vehicle to its rightful owner, abandoning a vehicle in a rutted-out gulley on a strip job cannot be enough.
The majority's opinion centers on the circumstances of Hall's abandonment of the police cruiser. The majority opinion states that
[n]o rational person would think that an individual who uses a police cruiser as a getaway car and who abandons that police cruiser in the middle of the road, knowing that police are following close behind, intends that the police cruiser never again be restored to the police. Instead, we think that Hall was simply trying to evade the police.
The majority's evaluation of Hall's intent is largely based on the abandonment of the police cruiser where the police were almost certain to find it. The flaw in this analysis is that Hall abandoned the car so that he could flee from the police on foot. Hall's *25 decision to abandon the vehicle and flee on foot was based on a determination of the best way to elude the police. It fails to provide any evidence of whether Hall intended to permanently deprive the police of the cruiser.
The majority emphasizes that this was a police car, and for that reason, it would be unreasonable for a jury to believe Hall intended to keep it. However, Hall would not necessarily have to keep the police car in order to deprive police of it. He could have also intended to dispose of the car in such a way as to make it unlikely that police would recover it so that the police would have less evidence to help them in finding him. He did not succeed in doing so in this case-but successful deprivation is not a required element of the crime. His intent to do so is sufficient.
This Court has held that "intent may be inferred from actions because a person is presumed to intend the logical and probable consequences of his conduct, and a person's state of mind may be inferred from actions preceding and following the charged offense." Stopher v. Commonwealth, 57 S.W.3d 787, 802 (Ky. 2001). The taking of the police cruiser is evidence of Hall's intent. If Hall had not been forced to abandon the car due to the police pursuit, would he have been more likely to have left the cruiser where the police would find it and have clues as to which way he went or would he have been more likely to hide or destroy the cruiser in order to deprive the police of clues that might help them capture him? In this case, it was perfectly reasonable for the jury to find that Hall intended to deprive the police of the cruiser. Such deprivation was a "logical and probable consequence of his conduct." The fact that the police were not ultimately so deprived is without consequence.
The fact that Hall took the police car is evidence from which the jury could infer his intent. In fact, statutes for other crimes provide that the taking of an item is evidence of intent to deprive the owner of that item. For example, KRS 433.234(1) reads: "Willful concealment of unpurchased merchandise of any store or other mercantile establishment on the premises of such store shall be prima facie evidence of an intent to deprive the owner of his property without paying the purchase price therefor." Furthermore, KRS 514.020 provides: "It shall be prima facie evidence of intent to commit theft by deception when one who has leased or rented the personal property of another fails to return the personal property to its owner within ten (10) days after the lease or rental agreement has expired...." While the totality of the circumstances could, in some cases, negate this inference of intent to deprive, those facts are simply not present here.
I also dissent as to the unanimity issue regarding resisting arrest. Consistent with my votes in Sifuentes v. Commonwealth, No. 2016-SC-000485-MR, 2018 WL 898228 (Ky. Feb. 15, 2018) and Melton v. Commonwealth, No. 2016-SC-000552-MR, 2018 WL 898307 (Ky. Feb. 15, 2018), I do not believe there was palpable error here. Furthermore, I do not believe the Commonwealth's concession of error where there is none should carry any weight.
For these reasons, while I concur with the majority as to the other issues, I dissent in part and would affirm the trial court's denial of Hall's motion for a directed verdict related to the police car and would hold that there was no reversible error regarding Hall's resisting arrest conviction on unanimity grounds.
Cunningham and Keller, JJ., join.

I would like to provide a brief explanation of strip job "roads," such as that in question. These "roads" are not public thoroughfares. In fact, they are not public at all; rather, they amount to paths across private property for the purpose of ingress and egress to and from a mine. If mining operations on this particular strip job had ceased (and if police had not been in hot pursuit), a vehicle abandoned in a rutted out gulley on the strip job could have been left for an untold amount of time before being discovered. Referring to the place where Hall abandoned the car as a "road" is a loose interpretation of that word, at best.
As a circuit judge, I heard several cases in which murder suspects had dumped their victims' bodies on strip jobs. They certainly did not do so because this was a place they expected the bodies to be recovered; rather, they did so because these places were remote and not heavily visited. Furthermore, in the late 1980s, the FBI (Mark Putnam) investigated a multi-state crime syndicate which ran a chop shop for stolen vehicles and heavy equipment. The individuals (who were eventually tried in federal court, convicted, and sentenced for their crimes) hid parts they could not sell-such as the frames and other parts of the vehicles and equipment containing identifying information and serial numbers-on a strip job in Letcher County. Simply put, a strip job "road" is not a place one would place an item for recovery by its owner; the reality is much the opposite.