# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: MARCH 25, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0141-MR

JIMMY R. BALDWIN                                              APPELLANT

                ON APPEAL FROM HARLAN CIRCUIT COURT
V.                 HONORABLE KENT HENDRICKSON, JUDGE
                          NO. 18-CR-00169

COMMONWEALTH OF KENTUCKY                       APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

On a motion for directed verdict, a trial court must view the evidence as a whole in favor of the Commonwealth. If the Commonwealth produces more than a mere scintilla of evidence, then the defendant's motion should be denied. In this case, the primary issue we are to determine is whether the Harlan Circuit Court properly denied Jimmy Baldwin's motion for a directed verdict on three counts of wanton endangerment first degree and one count of fleeing or evading police first degree. Upon a careful review of the record and the testimony, we hold that the trial court did not err and therefore affirm its judgment of conviction whereby it sentenced Baldwin to 20 years.

## I.      Facts and Procedural Background.

In the early morning of June 28, 2017, Officer Jonathan Franklin, of the Cumberland Police Department, was parked on the side of U.S. Highway 119 at

the Plaza Motel, just south of Cumberland. Fifteen minutes previously, he had bought coffee at the Speedway gas station in Cumberland, where he noticed a black Chevrolet Cobalt with three occupants pull in to the Speedway where they purchased food, drinks and cigarettes. While sitting on the side of the highway, facing northbound, he observed the black Cobalt rounding a southbound curve at such a high rate of speed that it veered into the northbound lane before correcting back into its proper lane. Officer Franklin estimated it was travelling at 90 miles per miles per hour (m.p.h.). The speed limit on that stretch of highway is 55 m.p.h. Officer Franklin immediately turned onto the southbound lane in pursuit and activated his emergency equipment, siren and blue lights. He testified at trial that he reached a speed of 120 m.p.h. The pursuit ended up being very short as the Cobalt pulled over after about a mile, where the driver exited the vehicle and ran to railroad tracks parallel to the highway to make an escape. After quickly questioning the two occupants remaining in the Cobalt, Devin Foster and Jordan Massingale, who identified Jimmy Baldwin as the driver, Officer Franklin briefly chased Baldwin, observing him in a culvert beneath the railroad, before losing him.

At trial, Foster testified that he was in the Cobalt's front passenger seat as it left Cumberland and that Baldwin was driving.[1] He stated that at one point he looked at the speedometer and Baldwin was driving 130 m.p.h. Foster further testified he was uncertain why Baldwin was driving so fast, but that he,

---

[1] Foster admitted to having consumed two beers, but did not implicate Baldwin in the consumption of alcohol.

2

Foster, was scared since he had had bad experiences with car wrecks and friends had been killed.

Following Foster's testimony, the Commonwealth closed its proof and rested its case. Baldwin did not testify. Baldwin moved for a directed verdict, which the trial court denied. Baldwin also tendered jury instructions including lesser offenses of wanton endangerment second degree and fleeing or evading police second degree. The trial court did not instruct on the lesser-included offenses. The jury convicted Baldwin of three counts of wanton endangerment first degree, one each as to Officer Franklin, Foster and Massingale, and one count of fleeing or evading police in the first degree. The jury recommended one-year sentences on each count, enhanced to twenty years by virtue of persistent felony offender in the first degree. The trial court imposed the twenty-year sentence recommended by the jury. Baldwin appeals to this court as a matter of right. Ky. Const. § 110(2)(b).

## II.    Standard of Review.

In this appeal, Baldwin claims two errors. First, the trial court failed to grant his motion for directed verdict. Our standard of review on such an issue is "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020) (quoting *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)). Second, the trial court erred in failing to instruct the jury as to wanton endangerment second degree and fleeing or evading police second degree. The standard of review as

3

to the failure to give a requested instruction, whether analyzed under a de novo or an abuse of discretion standard, is merely "whether the evidence would permit a reasonable juror to make the finding the instruction authorizes." *Allen v. Commonwealth*, 338 S.W.3d 252, 255 n.1 (Ky. 2011).

### III. Analysis.

#### A. Directed Verdict.

Baldwin's first claim is that the trial court erred in failing to direct a verdict of acquittal on these charges. In *Culver v. Commonwealth*, we noted,

> On the motion for a directed verdict, the single controlling question for the trial court is whether the Commonwealth has sustained the burden of proof by more than a scintilla of evidence, with such evidence being of probative value and of the quality to induce conviction in the minds of reasonable men. *James v. England*, 349 S.W.2d 359, 361 (Ky. 1961) (citation omitted). When the evidence is insufficient to induce reasonable jurors to believe beyond a reasonable doubt that a defendant is guilty, a verdict may be directed. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). When assessing the evidence, the trial court must consider the Commonwealth's evidence as a whole, assume the evidence is true, and draw all reasonable inferences from the evidence in favor of the Commonwealth. *Id.* The trial court may not consider questions of weight and credibility, those being the province of the jury. *Id.*

590 S.W.3d 810, 812–13 (Ky. 2019).

Proof of wanton endangerment in the first degree required a showing that "under circumstances manifesting extreme indifference to the value of human life, [Baldwin] wantonly engage[d] in conduct which created a substantial danger of death or serious physical injury to another person." KRS[2]

---

[2] Kentucky Revised Statutes.

508.060(1). Similarly, proof of fleeing or evading police in the first degree required that Baldwin operated "a motor vehicle with intent to elude or flee, . . . knowingly or wantonly disobey[ed] a direction to stop his . . . motor vehicle, given by a person recognized to be a police officer, and . . . [b]y fleeing or eluding, [Baldwin] . . . cause[d], or create[d] substantial risk, of serious physical injury or death to any person or property[.]" KRS 520.095(1)(a)4.

With respect to the results and circumstances described by these criminal offenses, "wantonly" is defined as "aware[ness] of and conscious[] disregard [of] a substantial and unjustifiable risk that the result will occur or that the circumstance exists." KRS 501.020(3). As to the risk, it "must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." *Id.* "Serious physical injury" is "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." KRS 500.080(15).

In *Culver*, we extensively discussed multiple cases from both this Court and the Court of Appeals analyzing wanton endangerment and fleeing or evading the police. 590 S.W.3d at 814-17. We concluded that "whether the defendant's act of fleeing police created a 'substantial risk' of death or serious physical injury depends on the proof and reasonable inferences that can be drawn from the evidence, with each case presenting its own unique

5

circumstances." *Id.* at 817 (citing *Bell v. Commonwealth*, 122 S.W.3d 490, 497 (Ky. 2003)).

In this case, the proof of wanton endangerment first degree was satisfied by Officer Franklin's observation that Baldwin negotiated a curve on U.S. Highway 119 at an estimated 90 m.p.h. and veered into the oncoming lane to negotiate the curve. Then, as Officer Franklin pursued, Baldwin sped up to 120 m.p.h. Foster corroborated this testimony that Baldwin was driving at 130 m.p.h. before eventually pulling over and exiting the Cobalt. Both Officer Franklin and Foster testified as to being fearful of substantial injury or death at that speed. Under Kentucky's directed verdict standard and in order for a jury to consider a criminal charge, more than a scintilla of evidence must be adduced from which a reasonable juror could conclude a defendant is guilty. *Culver*, 590 S.W.3d at 812-13. That standard is more than satisfied in this case. We hardly need authority to recognize that excessive speed reduces driver reaction time, increases the potential for a driver losing control of his or her vehicle, reduces the effectiveness of protective equipment, increases stopping distance after the driver perceives danger, and increases crash severity leading to more severe injuries.[3] In fact, in *Culver*, we affirmed the convictions of wanton endangerment in the first degree and fleeing or evading police in the first degree for Culver's actions as they related to the pursuing

---

[3] *See* Risky Driving/Speeding, U.S. Dep't of Transp., Nat'l Highway Traffic Safety Admin. https://www.nhtsa.gov/risky-driving/speeding (accessed Feb. 16, 2021).

6

officers, and Culver, although speeding, was going much slower than Baldwin. On two miles of U.S. Highway 150, Culver's actions resulted in one of the officers pursuing at 80 m.p.h. We acknowledge, as Baldwin argues, that Officer Franklin's pursuit of Baldwin occurred over a much shorter time and distance, but importantly, the speed was much faster. Here, Officer Franklin pursued at 120 m.p.h. where the posted speed limit was 55 m.p.h. And, according to Foster, Baldwin reached 130 m.p.h. at one point. Accordingly, the trial court did not err in denying Baldwin's motion for a directed verdict.

### B. Jury Instructions.

Baldwin's second argument is that the trial court erred in failing to give instructions on the lesser-included offenses of wanton endangerment in the second degree and fleeing or evading police in the second degree.

The trial court ruled that instructions on lesser-included offenses, as misdemeanors, were improper as time barred because their prosecution was not brought within the one year preceding the indictment. The offenses occurred in June 2018, and Baldwin was not indicted until October 2019. No authority was advanced to support this holding,[4] and the Commonwealth does not so argue in this appeal. Instead the Commonwealth argues that Baldwin

---

[4] The trial court's initial ruling appears contrary to this Court's holding in *Commonwealth v. Oliver*, 253 S.W.3d 520, 525–26 (Ky. 2008) (stating that a criminal defendant's request for "a lesser-included-offense instruction on an expired misdemeanor, . . . should [be] give[n] . . ., provided, of course, that the evidence supports the instruction. Absent a contrary indication in the record, the defendant's request for such an instruction will operate as a waiver of his right to a statute of limitations defense[]"). The trial court acknowledged its error in deciding Baldwin's motion for a new trial. Despite this acknowledgement, the trial court denied the motion on the basis that "no reasonable juror could acquit on the principal charges."

either invited or waived the error by not objecting to the trial court's final instructions. The Commonwealth's argument is unpersuasive. Under RCr[5] 9.54(2), error with respect to the instructions is preserved "by an offered instruction[.]" In this case, Baldwin preserved his objection. We therefore address the merits of his argument.

Our case law recognizes that "a defendant has a right to have every issue of fact raised by the evidence and material to the defense submitted to the jury on proper instructions." *Allen,* 338 S.W.3d at 255. This right includes entitlement to "an instruction on any lawful defense which he has[,]" *Hudson v. Commonwealth,* 202 S.W.3d 17, 20 (Ky. 2006), including instructions on lesser included offenses. In *Hudson* we stated that "[a]lthough a lesser included offense is not a defense within the technical meaning of those terms as used in the penal code, it is, in fact and principle, a defense against the higher charge." *Id.* (citation and internal quotation marks omitted). No instruction is warranted, of course, unless supported by the evidence, and thus "[a]n instruction on a lesser included offense is appropriate if, and only if, on the given evidence a reasonable juror could entertain a reasonable doubt of the defendant's guilt on the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense." *Osborne v. Commonwealth,* 43 S.W.3d 234, 244 (Ky. 2001). In *Allen,* we held that "[a]n appellate court likewise applies this 'reasonable juror' standard to a claim that the trial court

---

[5] Kentucky Rules of Criminal Procedure.

erred by refusing to give a lesser included offense instruction." 338 S.W.3d at 255. Thus, "[c]onsidering the evidence favorably to the proponent of the instruction, we ask, as just noted, whether a reasonable juror could acquit of the greater charge but convict of the lesser." *Id.* (citing *Thomas v. Commonwealth*, 170 S.W.3d 343 (Ky. 2005); *Osborne, supra; Commonwealth v. Wolford*, 4 S.W.3d 534 (Ky. 1999)).

As noted above, the elements of wanton endangerment in the first degree require extreme indifference to the value of human life, wanton conduct which creates a substantial danger of death or serious physical injury to another person. KRS 508.060(1). By contrast, wanton endangerment in the second degree, omits the element of "extreme indifference to the value of human life" and the wanton conduct only "creates a substantial danger of physical injury to another person." KRS 508.070(1). As to the charge of fleeing or evading, first degree, includes the element that "[b]y fleeing or eluding, the person is the cause, or creates substantial risk, of serious physical injury or death to any person or property[.]" KRS 520.095(1)(a)4. By contrast, fleeing or evading second degree omits this element. KRS 520.100.[6]

The question, therefore, is whether a reasonable juror could acquit Baldwin of the first-degree offenses and find him guilty of the lesser offenses. In *Lawson v. Commonwealth*, 85 S.W.3d 571 (Ky. 2002), *overruled on other*

---

[6] Both degrees of fleeing or evading police include the elements of "operating a motor vehicle with intent to elude or flee, the person knowingly or wantonly disobeys a direction to stop his or her motor vehicle, given by a person recognized to be a police officer[.]" KRS 520.095(1)(a), 520.100(1)(b).

*grounds by Hall v Commonwealth,* 551 S.W.3d 7 (Ky. 2018), we recognized, frankly, that in the vast majority of cases, the question of whether the actor's conduct "manifested extreme indifference to human life" or "create[d] a substantial danger of death or serious physical injury" "is subject to reasonable disagreement, and, therefore, the misdemeanor offense will typically be a necessary lesser-included offense[.]"  85 S.W.3d at 576.  In that case, the evidence was that Lawson was speeding, ran stop lights, violated lane discipline, and when he got on Interstate I-75 drove the vehicle at speeds between 100 and 125 m.p.h.  *Id.*  Eventually, Lawson made a U-turn in the grass median of the interstate, attempted to evade a police roadblock, hit the guard rail, lost control of the vehicle, went airborne and ended up in the median.  *Id.*  This court rejected the claim that Lawson was entitled to a misdemeanor instruction.  *Id.*

In this case, Baldwin did not attempt the extensive evasive action as Lawson.  However, Baldwin was going faster than Lawson, travelling on a non-limited access highway, and when he was apparently going slower, 90 m.p.h., as estimated by Officer Franklin, he still exhibited erratic driving in using the oncoming lane to negotiate a curve in the road.[7]  We conclude that the trial

---

[7] Baldwin argues that his erratic driving negotiating the curve in Highway 119, prior to Officer Franklin's engaging his emergency equipment, should not be considered in our analysis.  While we might agree that it plays no role in our analysis of the offenses involving Officer Franklin, Foster and Massingale were in the Cobalt when Officer Franklin first observed it rounding the curve.

10

court properly denied Baldwin's request for instructions on the lesser-included offenses.

## IV.    Conclusion.

For the foregoing reasons, we affirm the Harlan Circuit Court's judgment.

All sitting.  Minton, C.J.; Hughes, Keller, Lambert, Nickell and VanMeter, JJ., concur.  Conley, J., concurs in result only.

COUNSEL FOR APPELLANT:

Jennifer Leigh Wade
Erin Hoffman Yang
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Jenny Lynn Sanders
Assistant Attorney General