PEOPLE v HAMBLIN

Docket No. 186076. Submitted December 3, 1996, at Detroit. Decided June 6, 1997, at 9:10 A.M.

Lou Ann Hamblin was bound over for trial in the Detroit Recorder's Court on a charge of malicious destruction of property over $100 following a preliminary examination at which testimony by the complainant indicated that the defendant had destroyed a window of the complainant's automobile and that the complainant had purchased a used window for $45 at a junkyard and installed the replacement window himself and testimony by persons from three repair facilities indicated that a new window and its installation would cost over $100. The Recorder's Court, Cynthia Gray Hathaway, J., on the defendant's motion to quash the information, ruled that the examining magistrate had abused his discretion in binding over on the felony charge and accordingly reduced the charge to the misdemeanor offense of malicious destruction of property under $100. The prosecution appealed by leave granted.

The Court of Appeals *held*:

A person who wilfully and maliciously destroys or injures the personal property of another is guilty of a felony if the resulting damage exceeds $100 or of a misdemeanor if the resulting damage is $100 or less. MCL 750.377a; MSA 28.609(1). The prosecution establishes the amount of resulting damage by showing either the difference in the market value of the property immediately before and after the injury or the reasonable cost of repairing or restoring the property. The statute focuses on the nature of the damage caused by the offense regardless of who makes the repairs and has as its purpose to make offenders accountable for their actions. Accordingly, the out-of-pocket expenses of less than $100 incurred by a bargain-shopping or handy do-it-yourself complainant is not determinative of the amount of damage where, as here, there is ample and competent evidence of a reasonable cost of repair of over $100. The trial court erred in reducing the charge to a misdemeanor.

Reversed and remanded for further proceedings.

1. CRIMINAL LAW — MALICIOUS DESTRUCTION OF PROPERTY — AMOUNT OF DAMAGE.

The amount of damage to personal property, as an element of the misdemeanor offense of malicious destruction of property under $100 or of the felony offense of malicious destruction of property over $100, may be shown either as the difference in the market value of the property immediately before and after the injury or as the reasonable cost of repairing or restoring the property (MCL 750.377a; MSA 28.609[1]).

2. CRIMINAL LAW — MALICIOUS DESTRUCTION OF PROPERTY — AMOUNT OF DAMAGE — COST OF REPAIR BY COMPLAINANT.

The out-of-pocket expense of less than $100 by the complainant in a prosecution for malicious destruction of property over $100 who personally repairs the property is not determinative of the amount of damage where there is ample and competent evidence that repair would have cost over $100 had it been done by a professional repairer (MCL 750.377a; MSA 28.609[1]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Janice M. Joyce Bartee*, Assistant Prosecuting Attorney, for the people.

*Fred B. Walker*, for the defendant.

Before: MACKENZIE, P.J., and WAHLS and MARKEY, JJ.

MARKEY, J. The people of the State of Michigan appeal by leave granted from the trial court's order reducing the charge against defendant, a police officer, from the felony offense of malicious destruction of property over $100, MCL 750.377a; MSA 28.609(1), to the misdemeanor offense of malicious destruction of property under $100. We reverse and remand.

I

According to the testimony at defendant's preliminary examination, in December 1993, the complainant was driving east on the service drive of I-94 when he

encountered a vehicle that was on fire; a fire truck and defendant's police car were also at the scene attending the burning vehicle. Not knowing whether it was safe to drive around the vehicles in the roadway, the complainant blew his horn to get defendant's attention, and defendant responded by making a gesture that the complainant could not see. He honked again and defendant approached complainant's vehicle. When complainant told defendant that he wanted to drive through because his apartment was just on the other side of the road, defendant stepped back from the car and told him that he would have to turn around. When complainant delayed in leaving, defendant approached complainant's vehicle again and told him that he had five seconds to leave and began counting down. She also reached into the car with her right arm through the open window, and complainant pushed it out. As complainant attempted to roll up the window, defendant grabbed the window, which was rolled down seven or eight inches, with both hands and said "Don't make me do this, I'll break this fucking window." Complainant replied, "And you'll pay for it." Defendant yelled for assistance and continued to shake the window until it broke.

Complainant testified that he could not afford to have someone else replace or repair the window on his 1989 Geo Metro, so he went to a junk yard, purchased a used window for $45, and installed it himself. The prosecution called three additional witnesses at the preliminary examination who testified regarding the cost of repairing the driver side window of a 1989 Geo Metro. An employee at Henderson Glass testified that the retail cost of a new window is $163.79 installed, which was $128.64 for the glass and

$30 for labor. The customer service representative for Safelite Auto Glass testified that the new window would cost $153.32, or $124.35 for glass plus $24 for labor. A service consultant with Jack Webb Chevrolet testified that the new window would cost $189.20 and installation would be another $52.

On the basis of the testimony from the preliminary examination, the district court magistrate bound defendant over as charged with malicious destruction of property over $100. In doing so, the magistrate commented on the element of value, stating:

> The second point is to the value. I'm taking a position that had he not repaired the window [sic]. We're taking the testimony of three people and coming up with an estimate of over $100. The statute does not say if repair by the owner himself or—it's market value. The market value that we had today is in excess of a $100. We have a narrow question, but it is a narrow question of fact and I am gonna bind the defendant over on the charge.

At the trial court hearing on defendant's motion to quash the information on the basis of the value of the property damaged, the trial court granted defendant's motion in part and reduced the charge to malicious destruction of property under $100, stating:

> [T]he Court has reviewed the preliminary exam transcript and the Court finds that—I guess the question here was *what is the fair market value or what is the standard for determining the fair market value?*
>
> The legal definition is that it is the *reasonable and fair market value of repairing the damage or replacing the property destroyed.*
>
> In this case the property that was destroyed cost $45 to replace. The entire window was replaced . . . .

*        *        *

Okay. And the Court finds that the best test of what the fair market is is what an item actually sold for.

A seller is always going to be willing to sell at the highest price possible and unless that seller is able to get a purchaser who is willing to buy at that price then nothing takes place.

So, the Court is going to rule that in this case there actually was a fire—I mean a purchase for forty-five dollars. And even though the other witnesses came in and gave testimony that the replacement cost would have been more than a hundred dollars there is nothing to substantiate that.

So, in this case we actually had a seller who was willing to sell at forty-five dollars and actually got a purchaser at forty-five dollars.

And I think the magistrate abused his discretion.

So the Court is going to reduce the charge to malicious destruction of property under a hundred dollars. [Emphasis added.]

The people assert that the magistrate did not abuse his discretion in binding over defendant on the felony of malicious destruction of property over $100 where the reasonable and fair market value of repairing the window was clearly in excess of $100. We agree.

II

We review the district court magistrate's decision to bind over a defendant as well as the trial court's decision on a motion to quash an information to determine whether the district court abused its discretion. *People v Thomas*, 438 Mich 448, 452; 475 NW2d 288 (1991); *People v Honeyman*, 215 Mich App 687, 691; 546 NW2d 719 (1996). The decision whether alleged conduct falls within the statutory scope of a criminal law involves a question of law that we review de novo. See *Thomas, supra.*

"The primary function of the preliminary examination is to determine whether a crime has been committed and, if so, whether there is probable cause to believe that the defendant committed it." *People v Hunt*, 442 Mich 359, 362; 501 NW2d 151 (1993). If, at the conclusion of the preliminary examination, the magistrate determines that probable cause exists to believe that a felony has been committed and that the defendant committed it, the magistrate must bind the defendant over for trial in the circuit court. MCL 766.13; MSA 28.931; MCR 6.110(E); *People v Coddington*, 188 Mich App 584, 591; 470 NW2d 478 (1991). The prosecutor need not prove each element beyond a reasonable doubt but must present some evidence from which each element of the crime may be inferred. *Id.* Where the evidence conflicts and raises a reasonable doubt regarding the defendant's guilt, the issue is one for the jury and the defendant should be bound over. *People v Laws*, 218 Mich App 447, 452; 554 NW2d 586 (1996); *People v Moore*, 180 Mich App 301, 309; 446 NW2d 834 (1989).

In the case at bar, defendant was charged with violating MCL 750.377a; MSA 28.609(1), which states:

> Any person who shall wilfully and maliciously destroy or injure the personal property of another . . . if the damage resulting from such injury shall exceed $100.00, shall be guilty of a felony. If the damage done shall be $100.00 or less, such person shall be guilty of a misdemeanor.

The issue of first impression presented in this case is whether the district court magistrate abused his discretion in ruling that there was probable cause to believe that the damage resulting from defendant's actions "shall exceed $100.00" on the basis of the

repair estimates presented at the preliminary examination, rather than finding no probable cause on the basis of the actual amount of money that the complainant spent to repair the damaged property. We find no abuse of discretion.

A

Unfortunately, MCL 750.377a; MSA 28.609(1) does not delineate how to measure damages and we find no case law assisting either district or trial courts in making this calculation. As a starting point, we look to the Criminal Jury Instructions, Second Edition, for guidance.

According to CJI2d 32.1, courts should measure the amount of damages for malicious destruction of property according to the fair-market-value test, which is described as follows:

> (1) The test for the extent of damage is the reasonable and fair market value of repairing the damage or of replacing the property destroyed.
>
> (2) Fair market value is defined as the value at the time and in the place where the damage occurred.

The commentary to CJI2d 32.1 cites *People v Otler*, 51 Mich App 256, 259-260; 214 NW2d 727 (1974), as authority for the fair-market-value test. That case involved a prosecution for receiving or concealing stolen property over $100, however. MCL 750.535; MSA 28.803. Whereas receiving or concealing stolen property and other theft crimes that define the severity of the crime by reference to the value of the prop-

erty stolen[1] all focus directly on the value of the property in question, the malicious destruction of property statute focuses on the *amount of damage caused by the defendant.* Indeed, the statute requires a showing that "the damage resulting from an injury" exceeds $100 before the defendant can be bound over for this felony.

Analogizing to civil property loss cases in the absence of other case law on point, we find that this Court has applied the two tests set forth in CJI2d 32.1 where the damaged property can be repaired or must be replaced. In *Baranowski v Strating*, 72 Mich App 548, 562; 250 NW2d 744 (1976), this Court, citing *Bayley Products, Inc v American Plastic Products Co*, 30 Mich App 590, 598; 186 NW2d 813 (1971), stated:

> [T]he measure of damages . . . where the damage cannot be repaired is the difference between the market value of the property before and after the injury; where the damage can be repaired and the cost of repair is less than the value of the property prior to the injury, cost of repair is the proper measure.

See *Baranowski, supra* at 562, n 5; accord *Jackson Co Rd Comm'rs v O'Leary*, 326 Mich 570, 576; 40 NW2d 729 (1950); *Strzelecki v Blaser's Lakeside Industries of Rice Lake, Inc*, 133 Mich App 191, 194; 348 NW2d 311 (1984). Proof of value is determined by reference to the time and place of the injury and has been interpreted to mean the price that the item will bring in an open market between a willing buyer and seller. *Strzelecki, supra* at 194; see also *People v*

---

[1] See, e.g., MCL 750.356; MSA 28.588 (larceny), MCL 750.356c: MSA 28.588(3) (first-degree retail fraud), and MCL 750.356d; MSA 28.588(4) (second-degree retail fraud).

*Fishel,* 270 Mich 82, 85; 258 NW 217 (1935); *People v Gilbert,* 163 Mich 511, 512; 128 NW 756 (1910); *People v Dyer,* 157 Mich App 606, 609; 403 NW2d 84 (1986). Courts in foreign jurisdictions have applied this same rule of valuation in criminal or malicious mischief cases.

In *State v Crace,* 26 Or App 927, 932; 554 P2d 628 (1976), the Oregon Court of Appeals, in a criminal mischief case, found:

> [A]lthough damage to personal property is generally measured by the difference between its value immediately before and after the injury, an alternative measure is the reasonable cost of repairs to put the property in substantially the same condition it was in prior to the injury.

Similarly, in *People v Dunoyair,* 660 P2d 890, 894-895 (Colo, 1983), the Colorado Supreme Court stated:

> [T]he damage element in criminal mischief relates to economic loss caused by the knowing infliction of damage to the real or personal property of another. Value is relevant to the damage element because an offender cannot cause an economic loss that surpasses the actual value of the property damaged. Thus, where the cost of repair or restoration exceeds the actual value of an object, the victim's economic loss will be limited to the actual value of the object. Actual value will generally be determined by market value, that is, the price a willing buyer would pay for the object in the open market. . . . *In cases of partial damage, the appropriate measure of economic loss will generally be the reasonable cost of repair or restoration.* [Emphasis added; citations omitted.]

See also *Willett v State,* 826 P2d 1142, 1144-1145 (Alas App, 1992) (amount of damage caused by an act of criminal mischief may be established through evidence showing either diminution in value, i.e., sub-

tracting postdamage value from predamage value, or the reasonable cost of repair); *State v Gilbert*, 79 Wash App 383, 385; 902 P2d 182 (1995) (damages in a prosecution for criminal mischief include any diminution in the value of any property or the reasonable cost of repairs to restore injured property to its former condition); *People v Simpson*, 132 AD2d 894, 895; 518 NYS2d 453 (1987) (it is sufficient to define value in terms of the cost of repairing the property as long as the property is repairable).

We believe that these cases confirm our conclusion that, in a case of malicious destruction of property, the prosecutor may establish the amount of "damage resulting from [an] injury" by showing either (a) the difference in the market value of the property immediately before and after the injury, or (b) the reasonable cost of repairing or restoring the property. Here, because the complainant's automobile was repairable, the prosecutor properly presented evidence of the reasonable cost of repair in order to establish the amount of damage resulting from the defendant's shaking the complainant's car window. Representatives from three different repair facilities testified at the preliminary examination that the cost of repairing or restoring the broken window on the complainant's vehicle exceeded $100, with estimates ranging from $153.32 to $241.20 for the glass, installation, and tax. See *Crace, supra* at 932 (a nonowner familiar with the cost or repairing damage or who is called upon to repair the damage is generally competent to testify regarding repair costs). The complainant also testified that he replaced the window himself with a window from the junkyard, although he paid only $45. In light of the foregoing discussion, we find that the testi-

mony of the three glass repair representatives consti-
tuted competent evidence of the cost to repair com-
plainant's vehicle, i.e., the amount of "damage result-
ing from [the] injury" that defendant caused.

B

Nevertheless, the analysis does not end here. We
must now determine the effect, if any, of the fact that
complainant repaired the window himself at an actual
out-of-pocket cost of only $45 in light of the repair
estimates that the prosecutor presented at the prelim-
inary examination. The district court magistrate con-
cluded that the complainant's decision to fix the win-
dow himself for $45, viewed in conjunction with the
testimony of the representatives of the repair facili-
ties, created a factual question regarding the amount
of "damage resulting from [the] injury." The trial court
disagreed, however, finding that the complainant's
out-of-pocket expense was controlling regardless of
the testimony establishing the cost of repair at more
than $100. We believe that the magistrate's analysis is
correct.

Because the relevant inquiry under MCL 750.377a;
MSA 28.609(1) is the amount of the "damage resulting
from such injury," we believe that the focus of the
statute is on the nature of the damage that defend-
ant's actions caused, *not* the actual monetary cost to
the victim for repairing the resulting damage. Indeed,
there is no requirement in the statute that repairs
must actually take place. Furthermore, as we have
already discussed, the proper test for measuring dam-
ages is the "market value" of repairs. Thus, while the
trial court correctly stated that the proper legal test is
"the reasonable and fair market value of repairing the

damage or replacing the property destroyed," it erred in holding that complainant's actual expense in repairing the window himself established market value.

This conclusion is supported by Michigan and foreign precedents finding, albeit in differing factual situations, that the actual price of an item is merely evidence of value but not determinative in deciding value. In *Davidson v City of Lansing*, 356 Mich 697, 700; 97 NW2d 592 (1959), our Supreme Court observed that "[t]he sale price paid by appellant was an item to be considered by the assessors, but is not of and by itself controlling." In *Fisher-New Center Co v State Tax Comm*, 380 Mich 340, 362; 157 NW2d 271 (1968), our Supreme Court again recognized that "[s]ales price, particularly a single sales price, is only one index of true cash value." This Court in *First City Corp v City of Lansing*, 153 Mich App 106, 115; 395 NW2d 26 (1986), found that the "selling price of a particular piece of property is not conclusive evidence of that property's value."[2]

Likewise, in *Elomary v State*, 796 SW2d 191, 192 (Tex Crim App, 1990), the defendant drove his Mercedes-Benz into the complainant's Jaguar, denting the quarter panel, during a traffic altercation at a car wash. He was charged with criminal mischief under a state statute prohibiting a person from intentionally or knowingly damaging or destroying the property of another. The statute makes the offense a class A misdemeanor if the amount of damage is more than $200

---

[2] See also *Moran v Grosse Pointe Twp*, 317 Mich 248, 254-255; 26 NW2d 763 (1947) (a single sale or two of property does not determine the true cash value); *Twenty-Two Charlotte, Inc v Detroit*, 294 Mich 275, 283; 293 NW 647 (1940) (the bargain of the taxpayer is not controlling evidence of the "usual selling price"); *Detroit v Yellen*, 28 Mich App 529, 531; 184 NW2d 563 (1970) ("true cash value" is not solely "the usual selling price").

but less than $750. During the trial, the only evidence regarding the amount of damages was (1) testimony from an insurance adjuster who inspected the vehicle and appraised the cost of repair at $518.40 and (2) testimony from the complainant that she actually repaired the vehicle for less than the appraised amount and that repairs could have cost less than $200. The jury found the defendant guilty of the class A misdemeanor for causing damage in excess of $200 but less than $750. *Id.* at 192-193. The Texas Court of Appeals reversed the conviction because the victim, although she had actually repaired the vehicle, was unable to establish the cost of repair at more than $200. *Id.* at 193. The Texas Court of Criminal Appeals, however, reversed the Court of Appeals' decision and affirmed the defendant's conviction, reasoning:

> In this instance, we have testimony from Wells, Katz' insurance adjuster, who was shown to be qualified to give his expert opinion of the fair market value of what it was going to cost to repair the damages inflicted by appellant to Katz' Jaguar. Again, there is no requirement in the statute that in order to establish the Class A misdemeanor offense of criminal mischief, it is incumbent upon the State to also establish that repair work to the damaged property actually occurred or took place.
>
> Therefore, viewing the evidence in the light most favorable to the jury's verdict, we conclude that any rational trier of facts could have found beyond a reasonable doubt that the fair market value of the repair work to be done on Katz' Jaguar was more than $200 but less than $750. [*Id.* at 194.]

We believe that the rationale in *Elomary* reinforces our conclusion that the evidence of the actual amount paid for repairs is not determinative.

The same result was reached in *State v Horner*, 53 Wash App 806, 807; 770 P2d 1056 (1989), where the defendant pleaded guilty of malicious mischief for breaking the complainant's car window. The complainant obtained an estimate from a repair facility of $130.02 to replace the window but then decided to replace the damaged window himself. *Id*. The complainant's actual out-of-pocket expense was only $40.02, but he requested $90 as recompense for his labor, thereby equaling the quoted $130.02. *Id*. At sentencing, the complainant was awarded restitution in the amount of $130.02 on the basis of the repair facility's estimate. The Washington Court of Appeals upheld the restitution award, stating:

> It is clear that a victim's *labor* may be included in an order of restitution for injury to property. *The nature of the damage caused by the offense remains the same regardless of who makes the repairs, and denying restitution to victims who make their own repairs would defeat the statutory purpose of making offenders accountable for their actions.*
>
> *       *       *
>
> The estimate of the cost of replacement presented in this case was uncontradicted and provided the trial court with a logical and reasonable basis for establishing the victim's loss. The court's order of restitution was based on sound evidence, not on speculation or conjecture. [*Id*. at 808-809 (emphasis added).]

Although *Horner* is a restitution case, we believe that its rationale supports our conclusion that a victim's actual out-of-pocket expense is not determinative of the "nature of the damage caused by the offense." We will not permit one defendant to escape the felony charge of malicious destruction over $100

merely because the defendant damaged property that the victim is qualified to repair or able to replace at a discount or is unable to pay full price for replacing the item. Query whether, if this were possible, a destructive offender would offer to pay for or find a location that would provide the cheapest repairs possible (equaling an amount less than $100) in order to escape being charged with the felony offense. This clearly would not promote the statute's purpose of making offenders accountable for their actions. See *id.* We will not reward a defendant who fortuitously damages the property of a victim who turns out to be a bargain shopper or handy at do-it-yourself projects.

In light of the foregoing analyses, we find that the trial court erred in holding that the $45 complainant actually paid out of pocket to repair his car window was determinative of the market value of the "damage resulting from [the] injury" caused by defendant. While that amount can properly be considered as evidence of value, it is not in and of itself controlling. The prosecutor presented ample testimony that the cost to repair the window was more than $100, which may be considered as evidence of the amount of "damage resulting from [the] injury" caused by defendant, in accordance with MCL 750.377a; MSA 28.609(1). Accordingly, because the prosecutor presented competent evidence establishing the value of the damage that defendant caused and that value was more than $100, the district court magistrate did not abuse his discretion in binding defendant over on the felony charge of malicious destruction of property over $100, and the trial court erred in reducing the charge to malicious destruction under $100.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.