RENDERED: APRIL 24, 2008
TO BE PUBLISHED

# Supreme Court of Kentucky

2007-SC-000120-MR

TONY R. CRAIN        APPELLANT

V.

ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE BARRY WILLETT, JUDGE
NO. 03-CR-000033

COMMONWEALTH OF KENTUCKY        APPELLEE

**OPINION OF THE COURT BY JUSTICE NOBLE**

**AFFIRMING**

Appellant, Tony R. Crain, was convicted of several crimes, including first-degree criminal mischief and first-degree fleeing or evading, stemming from his running from the police in his car. He raises two claims of error on appeal: (1) that the trial court erred by not granting a directed verdict on charges of first- and second-degree criminal mischief; and (2) that the trial court erred in denying his request for a lesser-included instruction on the charge of first-degree fleeing or evading police. The first claim presents the Court with two issues of first impression, namely what constitutes a "pecuniary loss" as used in the criminal mischief statutes (KRS 512.020, 512.030, and 512.040), and whether property damage that a defendant's insurance company pays for should be regarded as a "loss" for purposes of those statutes.

## I. Background

The facts of this case do not appear to be at issue. Appellant was observed by a witness while driving his vehicle to be approaching the witness's car from behind while

swerving and accelerating erratically. Appellant hit the witness's vehicle from behind, knocking the car onto the median, and proceeded to drive away.

Police officer Shawn Bell responded to the hit and run call, identified the suspect vehicle, and engaged in pursuit. He signaled for Appellant to pull off of the road. As the officer approached the stopped vehicle on foot, Appellant drove away in the opposite direction. The officer resumed pursuit in his vehicle, and another officer attempted to block the road ahead with another vehicle.

Appellant swerved to avoid the blockade vehicle and continued toward an intersection, where he collided with the rear end of a pick-up truck, driven by Stanley Bruce, which was stopped at the light in the left-hand turning lane. The truck was pushed into the intersection, and Appellant collided with another vehicle that was stopped in the lane next to the pick-up truck. The impact with the pick-up truck was forceful enough that Bruce's head jerked back and broke the rear window. The repairs to the truck amounted to over $6,000, and were fully paid by Appellant's insurance company.

Appellant exited his vehicle and attempted to escape on foot, but Officer Bell quickly apprehended him. The officer observed that Appellant smelled strongly of alcohol and that he required assistance to walk to the cruiser. Appellant admitted to the officer that he had been driving drunk.

At trial, Appellant was found guilty of first-degree criminal mischief, first-degree fleeing or evading police, first-offense DUI, three counts of failure to stop and render aid, reckless driving, and being a persistent felony offender in the first degree. Appellant was sentenced to twenty years in prison. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

2

## II. Analysis

### A. Defendant's Motion for Directed Verdict on Criminal Mischief

The statutory elements of first-degree criminal mischief are that the person, (1) having no right to do so or any reasonable ground to believe that he has such right, (2) intentionally or wantonly (3) defaces, destroys or damages any property, (4) causing pecuniary loss of $1,000 or more. KRS 512.020. Second-degree criminal mischief requires a pecuniary loss of only $500, KRS 512.030, and third-degree criminal mischief has no required amount of pecuniary loss. The only element in dispute in this case is whether Appellant actually caused a pecuniary loss.

There is no dispute that Appellant's insurance company paid $6,274 for repairs to Bruce's truck. Appellant argues that since his insurance company paid for the loss, Bruce suffered no pecuniary loss from his own pocket, thus Appellant was entitled to a directed verdict on the criminal-mischief charge. In response, the Commonwealth contends that the insurance company suffered the pecuniary loss paying for the repairs. Appellant essentially responds that despite the remittance by the insurance company, the insurance company has suffered no loss because it contracted with Appellant to "accept the risk of claims being made in exchange for premiums paid by customers." Appellant argues that he was entitled to a directed verdict because there was no evidence to support the finding of a pecuniary loss.

Appellant notes that this is a matter of first impression, and research has turned up scant authority to contradict that statement. There is no definition of "pecuniary loss" in KRS Chapter 512 relating to criminal damage to property, nor does a definition of the term appear anywhere else in the Kentucky Revised Statutes. The commentary to KRS 512.020 states, "The objective of these sections is to protect property owners against

3

deliberate injury or destruction of their property, a loss which has the same net effect as a loss by theft." There is no further definition of "the net effect of a loss by theft," nor does KRS 514.010, regarding definitions for the chapter about theft, provide any more detail.

Looking to the briefs, Appellant's argument is unpersuasive for several reasons. KRS 512.020 states that the person is guilty if he "wantonly...destroys or damages any property causing pecuniary loss of $1,000 or more." (Emphasis added.) The statute has no requirement that the pecuniary loss be borne by the victim's bank account, only that the defendant cause a loss. And as the Commonwealth points out, the insurance company has paid over $6,000 for repairs to Mr. Bruce's truck.

In this element, Appellant has confused the criminal and civil liabilities. The criminal statute does not appear to make any distinctions regarding the risk bearing of pecuniary loss. It only makes distinctions regarding causation and the extent of the damage in determining the degree to which one can be punished. In a civil suit for damages, it may be true that because Bruce's truck repairs have been paid by the insurance company, he has not suffered a loss related to those repairs and therefore would not be entitled to compensation. But in this criminal proceeding it is certainly true that Appellant caused over $1,000 worth of damage to Bruce's property.

Though there are no Kentucky cases on point, there is some case authority that indirectly supports the Commonwealth's position. In People v. Hamblin, 568 N.W.2d 339 (Mich. App. 1997), the Michigan Court of Appeals found the defendant liable for malicious destruction of property for damages exceeding $100 (a felony charge), instead of damages less than $100 (a misdemeanor), even though the victim personally replaced the broken window of his vehicle at a total cost of $45. The court there said:

4

> Because the relevant inquiry under [the Malicious Destruction of Personalty statute] . . . is the amount of the "damage resulting from such injury," we believe that the focus of the statute is on the nature of the damage that defendant's actions caused, <u>not</u> the actual monetary cost to the victim for repairing the resulting damage. Indeed, there is no requirement in the statute that repairs must actually take place. Furthermore, as we have already discussed, the proper test for measuring damages is the "market value" of repairs. Thus, while the trial court correctly stated that the proper legal test is "the reasonable and fair market value of repairing the damage or replacing the property destroyed," it erred in holding that complainant's actual expense in repairing the window himself established market value.

<u>Id.</u> at 344. The evidence in <u>Hamblin</u> showed that expert mechanics had attested to the fact that replacing the window would cost between $153 and $214. The victim could not afford such prices and so purchased window glass from a salvage yard for $45.

The <u>Hamblin</u> court's reasoning is applicable to this case. The Kentucky statute also does not require actual repair by the victim, nor does it depend on the actual monetary cost borne by the victim. The measure of loss in determining criminal liability should be the fair market value of the loss. In Appellant's case, the fair market value of the loss he caused was the $6274 paid by his insurance company for repairs. It is not relevant that the insurance company paid for the repairs; it matters only that Appellant was the cause of that amount of damage.

The Commonwealth also argues persuasively on a point of public policy and sound logic. If Appellant were entitled to a directed verdict on these two counts simply because his insurance company compensated his victim, then he could also avoid criminal liability for first- and second-degree criminal mischief simply by paying the bills for the damage he causes. But allowing people to simply pay their way out of criminal liability surely cannot be the right outcome. Such logic would effectively neuter the criminal mischief statutes.

5

One other case from another state is worth noting on this point. In State v. Audiss, 20 N.W.2d 400 (S.D. 1945), the Supreme Court of South Dakota examined an appeal under their own version of the criminal mischief statute.[1] In Audiss, the defendant was charged with malicious mischief for shooting his neighbor's cattle with a gun. The defendant had offered to pay his neighbor money in the amount of the damage caused, and later raised this offer as a defense to the element of malice in the statute. The court rejected this argument stating that "[a]n offer to pay the damages sustained from an act of malicious destruction of property is not a defense." Id. at 402. Audiss is early evidence of a court disregarding a defendant's ability or willingness to finance the damage he has caused as a defense in a criminal proceeding.

Lastly, Appellant makes no effort to define "a loss which has the same net effect as a loss by theft," and instead makes the unqualified statement, "Nor was there a net effect the same as a loss by theft." Seemingly, Appellant takes this statement to mean that the property was not taken away from Bruce. However, this is a very narrow definition of the net effect of a loss by theft. And as the Commonwealth points out, property taken by theft is often returned to its rightful owner. In such case, the thief is not exonerated by the return of the property, nor has the net effect of the theft been reduced to nothing. The net effect of a theft could be understood to mean the change in the property owner's privileges that would not have occurred but for the interference of the defendant. In the case of a theft, the owner loses the privilege to use or enjoy his property during the time that the thief holds it. If the net effect of a loss by theft is the loss of privileges to the property one owns, then clearly Appellant caused the same net

---

[1] South Dakota law described the crime as "malicious mischief." Though many names appear across the different states, the same crime is implicated as in KRS 512.020. The list of names includes: malicious mischief, criminal mischief, and malicious destruction.

effect as a loss by theft to Bruce. During the time the truck was being repaired, Bruce lost the privilege to drive his truck, which being less than a year old was still considered a new vehicle. Bruce also lost the privilege of selling the truck at a later date as an excellent condition vehicle since the truck will forever be encumbered with a history of major repair. Thus, Bruce lost privileges of ownership that he would not have lost but for the interference of Appellant and has suffered a loss which, arguably, has had the same net effect as that of a theft.

There is no merit to Appellant's argument. It is undisputed that Appellant caused the damage to Bruce's truck. It is also undisputed that the fair market cost of the repairs exceeded $1,000. It is no defense that Bruce has been compensated for the damage to his truck. It matters only that Appellant caused damage to the truck without having a right to do so and that the measure of damage exceeds $1,000.

## B. Appellant's Request for the Lesser-Included Charge of Fleeing or Evading Police

Appellant was charged with and found guilty of first-degree fleeing or evading police and his request for a lesser-included instruction was denied. The difference between first- and second-degree fleeing or evading is that the first-degree offense requires the existence of one of four potential aggravating factors that the second-degree offense does not require. Compare KRS 520.095, with 520.100. Appellant was charged with the fourth aggravating factor: by fleeing or eluding, the person is the cause, or creates substantial risk, of serious physical injury or death to any person or property. KRS 520.095(a)(4).

The trial judge denied Appellant's request for an instruction on the second-degree offense. Ordinarily, the trial court has the duty to instruct the jury on the whole law of the case, including any lesser-included offenses supported by the evidence.

7

Gabow v. Commonwealth, 34 S.W.3d 63, 72 (Ky. 2001). However, that rule does not require an instruction on a theory with no evidentiary foundation. Id. Thus, the lesser included offense instruction is given "'only when the state of the evidence is such that a juror might entertain reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that the defendant is guilty of the lesser offense.'" Jacobs v. Commonwealth, 58 S.W.3d 435, 446 (Ky. 2001) (quoting Billings v. Commonwealth, 843 S.W.2d 890, 894 (Ky. 1992)); see also Lawson v. Commonwealth, 85 S.W.3d 571, 574 (Ky. 2002). Appellant is not entitled to an instruction on the lesser offense as a matter of right, nor is he entitled to the instruction based upon the facts of his case.

Before reaching the circumstances in the present case, it is worth taking the time to acknowledge the curious history surrounding KRS 520.095. The statute was enacted in 1998, and its awkward sentence structure has never been resolved. Read literally, subsection (a)(4) of the statute states that a person is guilty of first-degree fleeing if he "is the cause, or creates substantial risk, of serious physical injury or death...to property." The meaning of "serious physical injury or death to property" is further clouded by the definition of "serious physical injury" as defined in KRS 500.080(15), which reads: "Serious physical injury means physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of a bodily organ." (Emphasis added.)

It is hard to imagine how such a definition was intended for use in describing damage to property. Professors Lawson and Fortune note that the legislature probably did not intend to create a Class D felony by including damage to property in this statute

8

but that the issue was still left to be resolved by the courts. See Robert G. Lawson & William H. Fortune, Kentucky Criminal Law § 15-2(f), at 67 (1998 Supp. 2006).

Whatever the intention of the legislature, courts have since avoided the question altogether and, instead, have based their decisions on the more obvious and undisputed element of KRS 520.095(a)(4), namely, that a person is guilty of first-degree fleeing if he creates substantial risk of serious physical injury to any person. See Lawson, 85 S.W.3d at 576 n.9 (stating that observers have found the statute to contain "curious phrasing" and it is "largely incoherent in light of the KRS 500.080(15) definition of 'serious physical injury.'"); Bell v. Commonwealth, 122 S.W.3d 490, 494 n.6 (Ky. 2003) (reaching only the issue of risk of injury since no actual injury occurred and citing Lawson's footnote 9 regarding the wording of KRS 520.095). Since the intent of the statute can be accomplished by looking only to whether serious physical injury could result to a person, this Court will not attempt to rewrite the statute nor define the impossible.

It is clear that Appellant caused a substantial risk of injury to a person. He drove his car into three other vehicles while driving erratically. The jury also found him guilty of reckless driving and driving under the influence of alcohol. His collision with Bruce's truck was significant enough to cause over $6,000 of damage. No reasonable juror could acquit Appellant on the charge of creating a substantial risk of injury to a person while fleeing or evading the police and yet find him guilty of fleeing or evading the police without causing such risk or actual injury.

Appellant attempts to distinguish his actions from those of the defendant in Lawson. In Lawson, the Supreme Court of Kentucky upheld denying the instruction on the lesser-included charge for fleeing or evading, reasoning that it could "envision no

9

reasonable challenge to the conclusion that Appellant's actions created a substantial risk of serious physical injury or death to other motorists and police officers in his path, not to mention himself." Lawson, 85 S.W.3d at 576. The Court noted that the defendant in that case had driven faster than 125 mph, disregarded traffic signals, sped through intersections, weaved through traffic, and swerved to avoid a police blockade—a swerve which caused his vehicle to become airborne when it hit the guard rail. In this case, Appellant argues that the fact that he was never charged with speeding or disregarding traffic signals, and that his vehicle never left the ground, shows he was not driving as dangerously as the defendant in Lawson. However, these distinctions are shallow at best. The facts show that Appellant was driving erratically and swerving, that he drove around a police blockade, and that he collided with three different vehicles. The fact that Appellant was not charged with speeding or disregarding traffic signals is not paramount to claiming that he did not create a substantial risk of injury to other drivers.

To illustrate proper levels of risk, however, the Supreme Court of Kentucky held in Bell v. Commonwealth, 122 S.W.3d 490 (Ky. 2003), that the risk of injury or death created by the defendant must be substantial to support a conviction for first-degree fleeing. In that case, the defendant fled from the police on foot and while doing so either dropped or threw a handgun to the ground. He was charged with first-degree fleeing on the theory that the handgun could have accidentally discharged during the chase or upon landing on the ground, or, alternatively, that his possession of the handgun while fleeing created the risk of an armed standoff with the officer, which creates risk of injury or death to the officer. The Supreme Court found the risk of injury or death in either case to be too remote to support the charges and stated the risk created must, in fact,

10

be substantial. While Bell is a directed-verdict case, it is still instructive in this case as a counterpoint to Lawson.

Ultimately, this case is much more like Lawson than Bell. Given the facts of Appellant's case, no reasonable juror would conclude that the risk of injury created by Appellant is as remote and hypothetical as those raised in Bell. Appellant wrecked three vehicles besides his own while driving drunk and sent at least four people to the hospital.[2]

An instruction on the lesser-included charge is only required when a juror could reasonably acquit on the greater offense and yet believe beyond a reasonable doubt that the defendant is guilty of the lesser charge. In the present case, no reasonable juror could have concluded that Appellant was guilty of fleeing or evading the police but that he had not caused substantial risk of injury or death to other persons. The other persons involved were clearly put at a substantial risk of injury or death because of the defendant's actions. The trial judge did not abuse his discretion in denying the instruction, and there was no error.

## IV. Conclusion

Based upon the foregoing reasons, the judgment of the trial court is affirmed.

All sitting. All concur.

---

[2] None of the victims were found to have serious injuries after receiving medical attention; however, the question is whether or not Crain created substantial risk of injury or death.

11

COUNSEL FOR APPELLANT:

David A. Lambertus
600 West Main Street
Suite 300
Louisville, Kentucky  40202


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Todd D. Ferguson
Assistant Attorney General
Office of Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, Kentucky  40601-8204