RENDERED: DECEMBER 19, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky

2017-SC-000568-DG

CHRISTOPHER CULVER     APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.     CASE NO. 2015-CA-001206-MR
NELSON CIRCUIT COURT NO. 14-CR-00178

COMMONWEALTH OF KENTUCKY     APPELLEE

**OPINION OF THE COURT BY JUSTICE HUGHES**

**<u>AFFIRMING</u>**

Christopher Culver appeals from the Court of Appeals' opinion affirming his convictions for first-degree fleeing or evading police and first-degree wanton endangerment (two counts, one count for each pursuing police officer). On appeal to this Court, Culver maintains that evidence was not sufficient to survive a motion for directed verdict on these charges. Culver's primary argument is that the Court of Appeals ignored factually similar *Willis v. Commonwealth*, No. 2014-SC-000757-MR, 2016 WL 4487202 (Ky. Aug. 25, 2016) (unpublished), and like *Willis*, the evidence introduced at his trial was not sufficient to prove he created a substantial risk of serious physical injury or death, the element common to both charges, when the police pursued him in a motor vehicle chase. Finding the evidence sufficient to prove the challenged element, we affirm the Court of Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 15, 2012, Bardstown police were on the lookout for a man in a red car who left the scene of a domestic disturbance. Around 2:15 a.m., Police Officer Michael Medley noticed a beige Buick LeSabre on the passenger side of a red car in the Parkview Baptist Church parking lot. While he was pulling in to investigate, the man standing between the vehicles got into the Buick and slowly drove away. Officer Medley discovered the red car's passenger-side window had been broken out. Suspecting the driver of the Buick had broken into the red car, Officer Medley radioed Officer Nathan Phillips to stop the Buick. Officer Phillips, at the gas station across the street, pulled behind the Buick at the Parkway Drive and U.S. 150 intersection and activated his lights and siren. Rather than stopping, the Buick turned left onto U.S. 150 (Springfield Road) and accelerated. Officer Medley, with lights and siren on, followed Officer Phillips in pursuit of the Buick. Only later did police discover that Culver was the driver they were pursuing.

The officers pursued Culver two miles on U.S. 150 and then over a series of side roads including Highway 605 (Poplar Flat Road), Woodlawn Road, Wire Lane, and Stringtown Road, with the 5-6 minute pursuit encompassing approximately eight (8) miles. The posted speed limit in the area is 55 m.p.h.

Officer Phillips testified at trial that he travelled 80 m.p.h.-plus at one point on Springfield Road, and that his travel on this, the straightest of the five roads, would have been the fastest. He estimated going 70-75 m.p.h on Poplar Flat Road, which he described as a really curvy road. He described the side

roads as being narrow, Wire Lane as having some curves, and Stringtown Road as being really curvy. He did not know his or Culver's speed on those two roads, but Culver, going much faster than he, widened the gap between them. He concentrated on negotiating the curves so as not to wreck or crash and on keeping an eye on Culver at the same time. Officer Phillips lost sight of Culver after a couple of curves and hills on Stringtown Road and terminated the pursuit. He testified that he and Culver were taking the curves on these roads faster than they should have been, the chase was not safe, and he believed his life was in danger. Officer Phillips stated that Culver swerved around curves, but did not swerve when going straight, did not veer toward other objects, did not put on the brakes to stop short, and did not turn around to come toward him.

Officer Medley testified they traveled 65-70 m.p.h. on U.S. 150, over the speed limit on curvy Highway 605, and 65-70 m.p.h. over the other curvy roads, Wire Lane and Stringtown Road. No other cars were on these roads during the pursuit. Traveling behind Officer Phillips, Officer Medley did not observe Culver veer toward other property, slam on his brakes to cause a collision, or turn around and come back toward them. He testified that he felt his life was in danger due to the speed of the pursuit. During cross-examination, he also stated that as far as the officers driving 65-70 m.p.h., that was a safe speed, but they were not able to keep up with the suspect.

Culver was charged with first-degree wanton endangerment (two counts, one count for operating a motor vehicle in a reckless manner while being

3

pursued by Officer Nathan Phillips with his vehicle and another count for Officer Michael Medley) and first-degree fleeing or evading police (motor vehicle). Culver was also charged with: first-degree wanton endangerment related to a Nelson County deputy speeding 90-95 m.p.h. on Poplar Flat Road to join the pursuit, which resulted in the deputy not negotiating a curve and wrecking his vehicle; theft by unlawful taking over $500 (items stolen from the red car parked in the church lot); and being a persistent felony offender in the first degree (PFO I).

After a two-day trial, a jury found Culver guilty of all charges, except the jury found Culver guilty of misdemeanor second-degree wanton endangerment as to the Nelson County deputy. The jury recommended an enhanced twelve (12) year prison sentence for each felony crime and that the sentences be served concurrently, for a total sentence of twelve (12) years. The jury also recommended Culver serve thirty (30) days in jail, concurrent to the other sentences, for committing second-degree wanton endangerment. The trial court imposed the recommended sentence.

At trial, Culver moved for a directed verdict on each charge. The grounds for the directed verdict on the first-degree fleeing or evading charge and the first-degree wanton endangerment charges were the Commonwealth failed to prove Culver caused or created a substantial risk of serious physical injury or

4

death to the pursuing officers — the element common to both crimes.[1] The trial court denied the motions. On appeal, the Court of Appeals vacated the second-degree wanton endangerment conviction, but affirmed all the other convictions. Before this Court on a grant of discretionary review, Culver continues to challenge the first-degree wanton endangerment and first-degree fleeing or evading convictions. He does not challenge the theft by unlawful taking or first-degree PFO convictions.

## ANALYSIS

To obtain a conviction of a defendant, the Commonwealth has the burden to prove beyond a reasonable doubt each element of the crime charged. Kentucky Revised Statute (KRS) 500.070(1); see In re Winship, 397 U.S. 358, 364 (1970). On the motion for a directed verdict, the single controlling question for the trial court is whether the Commonwealth has sustained the burden of proof by more than a scintilla of evidence, with such evidence being of probative value and of the quality to induce conviction in the minds of reasonable men. James v. England, 349 S.W.2d 359, 361 (Ky. 1961) (citation omitted). When the evidence is insufficient to induce reasonable jurors to believe beyond a reasonable doubt that a defendant is guilty, a verdict may be directed. Commonwealth v. Benham, 816 S.W.2d 186, 187 (Ky. 1991). When assessing the evidence, the trial court must consider the Commonwealth's

---

[1] Culver moved for directed verdict multiple times, including at the close of the Commonwealth's proof, at the close of his case, and after the close of all proof. The grounds for the motions were the same across all requests.

evidence as a whole, assume the evidence is true, and draw all reasonable inferences from the evidence in favor of the Commonwealth. *Id.* The trial court may not consider questions of weight and credibility, those being the province of the jury. *Id.* The trial court's denial of a directed verdict may only be reversed by an appellate court when "under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt." *Id.*

The crimes at issue involve similar elements. For first-degree wanton endangerment, the Commonwealth was charged with proving Culver "under circumstances manifesting extreme indifference to the value of human life, . . . wantonly engage[d] in conduct which create[d] a substantial danger of death or serious physical injury to another person."[2] KRS 508.060. For first-degree fleeing or evading police, the Commonwealth's burden was to prove that "while operating a motor vehicle with intent to elude or flee, [Culver] knowingly or wantonly disobey[ed] a direction to stop his . . . motor vehicle, given by a person recognized to be a police officer, and . . . [b]y fleeing or eluding, he [caused], or create[d] substantial risk, of serious physical injury or death to [a] person or property." KRS 520.095(1)(a)4.

With respect to the results and circumstances described by these criminal offenses, a person acts "wantonly" "when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will

---

[2] The first-degree wanton endangerment jury instructions were limited to a finding that Culver wantonly created a substantial danger of death or serious physical injury to Officer Nathan Phillips and to Officer Michael Medley.

occur or that the circumstance exists." KRS 501.020(3). As to the risk, it "must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." *Id.* "Serious physical injury" is "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." KRS 500.080(15).

Culver argues that the evidence was insufficient to prove that as to both first-degree wanton endangerment and first-degree fleeing or evading, his fleeing in a vehicle caused or created substantial risk of serious physical injury or danger of death to Officers Phillips and Medley or serious injury to property.[3,4]

Culver cited published and unpublished cases in his briefs to the Court of Appeals to support these arguments. Culver discussed the facts in *Shouse v. Commonwealth*, 481 S.W.3d 480 (Ky. 2015) (insufficient proof of substantial danger of death or serious physical injury for wanton endangerment conviction); *Ison v. Commonwealth*, 271 S.W.3d 533 (Ky. App. 2008)

---

[3] Only first-degree fleeing or evading police references injury to property.

[4] Culver also argues that the evidence was insufficient to prove that as to first-degree wanton endangerment, his fleeing in his car was wanton conduct manifesting extreme indifference to the value of human life. Upon review of the trial video, this argument was not preserved. Although this lack of preservation was not noted in the briefs, because the trial court did not consider this argument, we decline to address it on appeal. *Commonwealth v. Smith*, 542 S.W.3d 276, 285 (Ky. 2018) (citing *Combs v. Knott County Fiscal Court*, 141 S.W.2d 859, 860 (Ky. 1940)). To the extent the Court of Appeals addressed the unpreserved argument, that court's conclusion is not inconsistent with our result in this case. Like this Court, the Court of Appeals affirmed Culver's convictions on all three counts.

(insufficient proof of extreme indifference to the value of human life for wanton endangerment conviction); *Brown v. Commonwealth*, 297 S.W.3d 557 (Ky. 2009) (sufficient proof of extreme indifference to value of human life and substantial risk of serious physical injury or death for wanton endangerment conviction); and *B.B. v. Commonwealth*, No. 2011-CA-002044-DG, 2014 WL 1998725 (Ky. App. May 16, 2014) (unpublished) (insufficient proof of extreme indifference to the value of human life for wanton endangerment conviction) (cited on the grounds that very few cases exist adequately addressing speeding alone constituting wanton conduct or endangerment). In his reply brief, Culver emphasized *Willis v. Commonwealth*, No. 2014-SC-000757-MR, 2016 WL 4487202 (Ky. Aug. 25, 2016), decided after the initial briefing, as being the most factually similar to his case. Other than *Willis*, the cases Culver cited were part of the Court of Appeals' analysis. The Court of Appeals relied primarily on *Brown*, factually similar in terms of it involving a police chase, to affirm the trial court.

Culver complains that the Court of Appeals misperceived the evidence, misapplied *Brown*, and ignored *Willis*, the more recent case and between the two, the case more factually similar to his own case. Before this Court, Culver

cites the same[5] and additional[6] published and unpublished cases in part to demonstrate that no cases exist which conclude there was sufficient evidence to believe wanton behavior created or caused substantial risk of serious physical injury or death when the defendant was speeding at speeds 10-25 m.p.h over a 55 m.p.h speed limit but otherwise obeyed other traffic rules. Culver continues to recite *Willis*'s factual similarities to persuade this Court that like in *Willis*, the evidence was not sufficient to prove Culver's conduct caused or created a substantial risk of serious physical injury or death.

---

[5] Culver notes, like he did before the Court of Appeals, that this Court in *Shouse* and the Court of Appeals in *Ison* reached decisions favoring the defendant by contrasting the fact situation at issue to other cases concluding facts were sufficient to support a finding that the defendant manifested an extreme indifference to human life while operating a car. *Ison*, dealing pertinently with first-degree wanton endangerment mental culpability sufficiency of proof, quotes the review in *Brown v. Commonwealth*, 174 S.W.3d 421, 425 (Ky. 2005), of unintentional vehicular homicide cases which held evidence was sufficient to prove the defendant acted under "circumstances manifesting extreme indifference to human life." *Brown* examined *Hamilton v. Commonwealth*, 560 S.W.2d 539, 543 (Ky. 1977); *Walden v Commonwealth*, 805 S.W.2d 102, 105 (Ky. 1991); *Estep v. Commonwealth*, 957 S.W.2d 191, 193 (Ky. 1997); *Love v. Commonwealth*, 55 S.W.3d 816, 827 (Ky. 2001); and *Cook v. Commonwealth*, 129 S.W.3d 351, 362-63 (Ky. 2004). *Shouse*, 481 S.W.3d at 489, examined *Ramsey v. Commonwealth*, 157 S.W.3d 194 (Ky. 2005), offered by the Commonwealth in support of Shouse's wanton endangerment conviction. Culver in turn references these cases as part of his case survey. Because Culver did not move for a directed verdict on the basis that the Commonwealth failed to prove he manifested an extreme indifference to human life, we do not consider these cases within our review.

[6] Culver also broadens the authority cited by incorporating discussion of cases discussed in *Willis*: *Bell v. Commonwealth*, 122 S.W.3d 490 (Ky. 2003); *McCleery v. Commonwealth*, 410 S.W.3d 597 (Ky. 2013); *Crain v Commonwealth*, 257 S.W.3d 924 (Ky. 2008); and *Lawson v. Commonwealth*, 85 S.W.3d 571 (Ky. 2002). Beyond *Willis*, Culver cites three other unpublished cases involving both wanton endangerment and fleeing or evading, but decided against the defendant: *Little v. Commonwealth*, 2010 WL 1005865 (Ky. Mar. 18, 2010); *Turner v. Commonwealth*, No. 2016-CA-001443-MR, 2017 WL 5508759 (Ky. App. Nov. 17, 2017); and *Robinson v. Commonwealth*, No. 2016-CA-000151-MR, 2018 WL 565826 (Ky. App. Jan. 26, 2018). We do not address these other unpublished cases.

9

In *Willis*, around 7:30 p.m., while dark outside, the defendant was parked on the side of the road. When an officer stopped to check on the situation, Willis drove off. The officer turned on his lights and siren and pursued Willis. Willis drove around 55 to 65 m.p.h. on the main highway and around 25 to 35 m.p.h. on the side roads, some of which were narrow and winding. He also drove through a stop sign and a red light while being pursued, but there were no cars or pedestrians near those intersections. Realizing Willis was not going to stop, the officer called for backup, but eventually called off the chase to avoid endangering himself and the other officer who joined the pursuit. The officer testified that based on the number of car crashes on the highway in the past, he was of the opinion that Willis's highway speed was excessive at times. A little traffic was on the road toward the beginning of the chase, but not afterward. There was some water on the roads, but it was not raining at the time of the chase. Willis did not pass any vehicle, drive erratically, or run or almost run into or over anything during the pursuit. 2016 WL 4487202, at *1, *3.

Willis, charged with both first-degree fleeing or evading police and first-degree wanton endangerment, claimed the trial court erred by denying a directed verdict on the charges. As to the fleeing or evading charge, he argued that the evidence was insufficient to show that he caused or created a substantial risk of injury during his flight from police. *Id.* at *2. As to the wanton endangerment charge, he argued that the evidence was insufficient to prove either that he created a substantial danger of death or serious injury to

10

another or that he engaged in wanton conduct under circumstances manifesting extreme indifference to the value of human life. *Id.* at *5-6.

Because Willis did not cause any injury to a person or property, the fleeing or evading analysis was limited to whether there was sufficient evidence that Willis's fleeing created a substantial risk of serious physical injury (and likewise for this aspect of the wanton endangerment analysis that followed). *Id.* at *3, *5. The *Willis* Court agreed with the trial court, which described the chase as a "low-speed chase,"[7] that the question was a close call but identified other fleeing or evading cases — *Crain*, 257 S.W.3d 924; *Lawson*, 85 S.W.3d 571; and *McCleery*, 410 S.W.3d 597 — as providing guidance to conclude, unlike the trial court, that the evidence was insufficient to prove Willis created a substantial risk of serious physical injury or death. *Id.* at *3-4. *McCleery*, the most factually similar of the three cases,[8] presented risk-increasing facts which distinguished it from Willis's case. *Id.* at *4.

In the case before us, the Court of Appeals relied primarily on *Brown*, 297 S.W.3d 557, to decide the evidence was sufficient to satisfy the wantonness element of the wanton endangerment charge and the fleeing or

---

[7] 2016 WL 4487202, at *1, n.1.

[8] The conduct of and risks created by the *Crain* and *Lawson* defendants contrasted greatly with Willis's. In *Crain*, a substantial risk was created when defendant drove erratically, swerved to avoid a police blockade, collided with three other vehicles, and finally attempted to escape on foot, all while under the influence of alcohol during his flight from the police. In *Lawson*, a substantial risk was created when defendant drove close to 125 m.p.h., ignored traffic lights, weaved through traffic, sped through intersections, and finally caused his vehicle to become airborne after hitting a rail in an attempt to avoid a police blockade. 2016 WL 4487202 at *4.

evading charge. When addressing the "substantial risk" element of the fleeing or evading charge, the Court of Appeals found Officer Medley's testimony that he feared for his safety as sufficient to survive a directed verdict motion.

In *Brown*, around midnight, the defendant was observed driving down a road which circumvented a drunk driver checkpoint. One of the police officers began to follow Brown. Brown then accelerated, and when he drove above the speed limit, the officer turned on his lights and siren, attempting to pull Brown over. Brown did not pull over but accelerated more, and a chase ensued. On roads with speed limits of 25 and 35 m.p.h., the officer almost reached a speed of 80 m.p.h. Brown nearly caused three accidents during the chase, two while driving down the center of the road. One driver swerved off the road and another swerved onto the sidewalk to avoid a head-on collision with him. Brown also lost control of his car, drove into someone's front yard, and then drove between a telephone pole and a tree. The other officers who joined the chase estimated their top speed was between 50 and 70 m.p.h. Brown's sixteen-year-old niece was in the car with him during the chase. 297 S.W.3d at 559.

Brown argued that he was entitled to a directed verdict as to the first-degree wanton endangerment charge. This Court disagreed, primarily because of the risk created to his passenger.[9] *Id.* at 560. Culver cited *Brown* to the

---

[9] We stated:

> In this case, the jury's verdict was not clearly unreasonable. The jury concluded that [Brown's] conduct, which included driving late at night, sometimes down the middle of the road, at perhaps triple the

12

Court of Appeals to distinguish his behavior as not creating a substantial risk of serious physical injury or death, but the appellate court was not persuaded.

Clearly, the facts in *Willis* are substantially different from the facts in *Brown*. Culver views *Willis* to be so similar to the facts of his case that the same favorable result is dictated for him. Culver points out that as in *Willis*, the pursuit occurred at a time when other traffic was light or not present, he was alone in his car, and part of the pursuit was on curvy roads. Furthermore, although his speeds were on occasion higher than Willis's with the speed of the pursuit reaching 10-25 m.p.h. over the speed limit, he did not disobey traffic control devices and the speeds were not high enough to cause either officer to cross the center lane or run off the road. He argues, that like in *Willis*, he did not create a substantial risk of injury to a person or property and that the officers' opinions about the danger of the pursuit were not enough evidence to survive his motion for directed verdict, especially when the officers testified that they broke off the pursuit when they felt it became too dangerous.

Although factual similarities may exist between this case and *Willis*, we are not persuaded that *Willis* dictates a finding that the evidence was insufficient to prove Culver created a substantial risk of serious physical injury

---

speed limit, created a substantial danger of death or serious physical injury to his passenger. Finding such a danger seems quite reasonable given this evidence. In fact, [Brown] nearly caused two high-speed, head-on collisions, and he barely avoided crashing into a tree and telephone pole. Although [Brown] avoided getting into a catastrophic accident, the evidence supports that he repeatedly foisted the risk of catastrophic injury onto his passenger.

297 S.W.3d at 560.

13

or death.  While a court may, *see Shouse, Ison,* and *Willis,* or may not, *see Brown,* 297 S.W.3d 557, look for guidance from other cases, whether the defendant's act of fleeing police created a "substantial risk" of death or serious physical injury depends on the proof and reasonable inferences that can be drawn from the evidence, with each case presenting its own unique circumstances.  *Bell,* 122 S.W.3d at 497 (quoting *Lofthouse v. Commonwealth,* 13 S.W.3d 236, 241 (Ky. 2000)).

In *Bell,* this Court observed that there are levels of risk and that a risk must be "ample, considerable in degree or extent, and true or real; not imaginary" (footnotes, modifications, internal ellipses, and internal quotations omitted) in order to rise to the level of being a "substantial risk."  *Id.*  Culver contends that, as reflected in the Commonwealth's speeding statutes, speeding by itself does not create a substantial risk of serious physical injury.  In terms of whether a substantial risk of serious physical injury or death is created during a motor vehicle pursuit, as our caselaw reflects, the analysis generally requires consideration of the manner in which a vehicle is operated and the conditions under which that vehicle is operated.  When speeding occurs with other factors (for example, disobeying stop signs and red lights; inclement weather; and circumstances in which other vehicles and pedestrians are at risk of serious physical injury indicated by the need to get out of the defendant's way, or likely to be put at such risk, such as in congested areas with schools and shopping centers) it may be enough to establish a substantial risk of

serious physical injury. *See e.g., Brown*, 297 S.W.3d 557; *Lawson*, 85 S.W.3d 571; and *McCleery*, 410 S.W.3d 597.

As stated earlier, under Kentucky's directed verdict standard in order for a jury to consider a criminal charge, there must be more than a scintilla of evidence from which a reasonable juror could conclude a defendant is guilty. Here, the Commonwealth was required to produce more than a scintilla of evidence from which a reasonable juror could conclude that Culver created a substantial risk of serious physical injury or death. It is undisputed that the pursuit happened in the dark, while traveling down the highway and curvy side roads, and that the officers' speed reached 10-25 m.p.h. over the speed limit while pursuing a faster-traveling Culver. Although Culver contends otherwise, the risks created were not due to speeding alone.

In consideration of whether the Court of Appeals erred when affirming the trial court's denial of the directed verdicts, the question we ultimately consider is whether under the evidence as a whole, it was clearly unreasonable for a jury to find Culver's conduct caused or created a substantial risk of serious physical injury or death to the officers in pursuit. Culver contends that just as the opinion of the officers about the danger of the pursuit was not dispositive to this Court in *Willis* when assessing the quantum of proof regarding whether the risk was substantial, it should not be dispositive in this case. In *Willis*, as noted above, the lead officer called off the pursuit to avoid putting himself or the other officer in danger. 2016 WL 4487202, at *1, *3. Here, in contrast, although Officer Medley's testimony may have been viewed as

15

inconsistent in regard to whether the officers were safely speeding, both officers testified they felt in danger as they pursued Culver, and a trial court deciding a directed verdict motion must view the evidence in favor of the Commonwealth. The officers' testimony, which may be viewed in harmony with the other circumstances of the pursuit, was sufficient to allow the jury to decide whether Culver caused or created a substantial risk of serious injury or death to Officers Phillips and Medley. Consequently, the trial court did not err in denying Culver's motion for a directed verdict for the first-degree fleeing and evading charge and for the first-degree wanton endangerment charge, and the Court of Appeals did not err when it affirmed the trial court.

## CONCLUSION

On appeal to this Court, Culver only challenges the trial court's denial of a directed verdict on the first-degree fleeing or evading police and on the first-degree wanton endangerment charges. The Commonwealth introduced evidence sufficient to prove Culver caused or created a substantial risk of serious physical injury or death, the challenged element common to both crimes. Under the evidence as a whole, it was not clearly unreasonable for a jury to find Culver guilty of the crimes. Consequently, the trial court did not err by denying Culver's motions for directed verdict on the charges. Accordingly, for the foregoing reasons, the Court of Appeals' opinion, upholding

16

the Nelson Circuit Court conviction and judgment on these charges, is affirmed.

Minton, C.J.; Keller, Nickell, VanMeter, and Wright, JJ., concur. Lambert, J., not sitting.


COUNSEL FOR APPELLANT:

Kathleen K. Schmidt
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jason Bradley Moore
Jeffrey Ray Prather
Jesse Robbins
Assistant Attorneys General
Office of Criminal Appeals